277 P.2d 820

**STATE of Utah, Respondent,**

v.

**Hal J. LANE, Appellant.**

**No. 8210.**

Supreme Court of Utah.

Dec. 16, 1954.

24

Lee W. Hobbs, Salt Lake City, for appellant.

E. R. Callister, Jr., Atty. Gen., Earl S. Spafford, Salt Lake City, for respondent.

WORTHEN, Justice.

Defendant was convicted of the crime of issuing a fictitious check and he appeals. The check was drawn on the account of Walter Stevenson. Actually, there was such an account in the Continental Bank & Trust Co. and many checks had been drawn and honored on that account. However, there was no actual person named Walter Stevenson, but it was an assumed name used by Kevin Hanley. Hanley and Frank Clouse were named as co-defendants with Lane.

Hanley went to the bank and opened the account in the name of Walter Stevenson. A bank teller identified Hanley as Walter Stevenson. Hanley signed the signature card using the name Walter Stevenson.

Hanley and Clouse were admitted accomplices of Lane and were the principal witnesses. Lane did not testify. According to the testimony of the accomplices, Hanley and Clouse, a scheme was entered into between them and defendant for cashing many checks issued against the Walter Stevenson account. Under the scheme as recounted by the accomplices, Lane, the brains, was to sign the name Walter Stevenson to numerous checks.

One lot of checks was made to Kenneth W. Laury as payee, each for $78.20. The others were made payable to Edward Johnson for $74.64.

In order to be able to negotiate the checks, Hanley procured a driver's license in Salt Lake City in the name of Kenneth William Laury, representing that he was Laury. He also obtained a driver's license in Ogden, Utah, in the name of Edward Johnson, using the pretense that he was Johnson. Hanley testified that he was not a member of the American Legion, but he obtained a membership card issued in the name of Hanley and one issued in the name of Laury.

Armed with the driver's licenses and with the checks payable to Laury and Johnson, Hanley went to work. He negotiated many checks. One was cashed at the Paris Co., one at Auerbach's and one at Safeway Stores Inc. The defendant was prosecuted on the check cashed at Safeway Stores Inc. Hanley purchased some groceries at Safeway's and obtained the manager's o. k. on the check issued in favor of Laury for $78.-20, by identifying himself as Laury with the driver's license he had obtained in that name.

Hanley, posing as Laury, bought $8 or $9 worth of groceries and obtained cash for the balance.

Hanley testified that at the suggestion of defendant he purchased a billfold at the Paris Co., which he gave to defendant, and received the balance in cash. The accomplices testified that the cash received at Safeway, Paris Co. and Auerbach's was delivered to Lane.

An officer testified that he saw defendant in jail with a billfold in his hand attempting to tuck it in the corner of a counter in the

jail. The officer likewise testified that at the time defendant was arrested he had $145 on his person.

Clouse testified that after the check was cashed at Safeway's on Dec. 5, he and defendant were to meet Hanley at a place of business near 5th South and Main in Salt Lake City; that as they drove up·they saw two officers and Lane gave a bundle of checks already signed to Clouse and told him to wait for him at a tavern. Defendant was arrested in the car as he sat outside the business place near 5th South and Main and the arresting officer found two checks, one behind the sun visor which was signed by ·Walter Stevenson for $78.20 and payable to Kenneth W. Laury; the other in the glove compartment signed by Walter Stevenson for $74.64 and payable to Edward Johnson.

One of the officers testified that after the arrest of defendant he had him at the County Jail with Hanley; that the officer asked Lane if he knew Hanley and he said he had never seen him before in his life.

Clouse testified that he buried the bundle of checks given him by Lane near the Ogden Arsenal.

Defendant at the end of the State's case moved for dismissal and discharge of defendant on two grounds: first, because the facts proved by the State failed to establish that the check claimed to have been issued was a fictitious check within the meaning of our statute; second, the testimony of Hanley and Clouse, accomplices, was not sufficiently corroborated as a matter of law.

.The motion was denied.

Since Hanley actually did open the account in the name of Walter Stevenson, and drew checks against the account which were paid, it may be doubted that the check in question was fictitious within the meaning· of our statute. In view of our holding on the question of corroboration we deem it unnecessary to discuss or decide that question.

Section 77–31–18, U.C.A.1953, provides:

"A conviction shall not be had on the testimony of an accomplice, unless he is corroborated by other evidence, which in itself and without the aid of the testimony of the accomplice tends to connect the defendant with the commission of the offense; and the .corroboration shall not be sufficient, if it merely shows the commission of the offense or the circumstances thereof."

The respondent contends that the record discloses sufficient corroboration of the testimony of the accomplices:

1. It is contended that the fact that defendant was found in possession of a wallet which was·identified by Hanley as the one purchased is sufficient. But there is no evidence that the check given to the Paris Company for the wallet was not honored by the bank. There is no evidence that the check was not paid by the bank out of funds in the account of Walter Stevenson. Unless it were shown that it was a similar

false and fraudulent instrument, it could not be urged that it was available to show a course or plan of criminal action.

Furthermore, there is no corroboration of the testimony of Hanley as to the identification of the wallet. He testified that at the defendant's request he purchased a wallet at the Paris Company. A wallet was found on defendant's person. No one, except the accomplice, identified the wallet as having been purchased at the Paris Company. No witness from that store identified it as having been purchased at the Paris Company. No witness from that store identified it as a wallet sold by them nor as one similar to those sold by them. The identification of the wallet by the accomplice as one purchased at the Paris Company adds nothing except further uncorroborated testimony.

■ 2. Respondent contends that the checks signed by Walter Stevenson are not in the handwriting shown on the signature card signed by Hanley as will appear from an examination of the signature card, and the check, which is the subject of the prosecution.

No expert testified that the check given to Safeway Stores was not signed by the same hand as the signature on the card at the bank. No testimony was offered to show that it was signed by Lane. Because the check in question was not signed by Hanley does not establish that it was signed by defendant. It cannot be inferred that Lane signed it unless we accept the testimony of the accomplices.

■ 3. Respondent further contends that the testimony of Hanley is corroborated by the finding of two checks in the gray Lincoln automobile in which defendant was sitting when he was arrested. Clouse testified that he was with defendant in the Lincoln a short time before defendant's arrest. He testified that defendant gave him a bundle of checks and told him to go to a tavern and wait for defendant. One of the officers testified that Clouse went with him to a point near the Ogden Arsenal and they dug up the checks which Clouse had buried in the sand. The only person who testified that the bundle of checks had been in the Lincoln was Clouse. There is no other testimony even suggesting that defendant Lane knew they were in the car. The record discloses, however, that Clouse knew they were there.

■ 4. Respondent contends that "miscellaneous groceries" were found in the automobile in which defendant Lane was sitting when he was arrested.

The testimony of the arresting officer on this point was as follows:

"Q. You noticed some paint clothes in the back seat? A. And a sack, store sack, paper sack. And we knew that there had been some groceries purchased, from talking to Mr. Hanley * * *"

The arresting officer did not open or look inside the "sack."

28

It is a far cry from "a sack, store sack, paper sack" to groceries purchased with a fictitious check. Had the arresting officer examined the contents of the sack, and had the State shown the identical items purchased at Safeway's to be in the car, there would be some corroboration, but it certainly cannot be contended that a *sack,* a *store sack* or a *paper sack* without any testimony as to its contents, establishes that defendant was in possession of the groceries purchased with a fraudulent check.

5. Respondent further contends that the defendant's denial of any acquaintance with the accomplice Hanley is a strong inference of guilt, particularly in view of his later admission that he did know Hanley.

The fact that defendant lied does not prove him guilty, nor does the fact that he falsely denied his acquaintance with Hanley corroborate the testimony of the accomplices. Touching on this point, this court said in State v. Laub, 102 Utah 402, at page 411, 131 P.2d 805, at page 809:

"The only evidence which points to his guilt is that he made false statements about trading pinenuts for the meat in Nevada and he took part of the meat. This is not sufficient evidence to uphold his conviction."

We are of the opinion, and hold, that there was insufficient corroboration of the testimony of the accomplices as a matter of law and the motion to dismiss at the close of the State's case should have been granted.

The judgment is reversed and it is ordered that defendant be discharged from custody.

McDONOUGH, C. J., and CROCKETT, HENRIOD and WADE, JJ., concur.