Argued February 6, reargued May 9, affirmed September 18, 1968

## STATE OF OREGON, *Respondent, v.* THOMAS E. CARROLL, *Appellant.*

444 P. 2d 1006

*Gary D. Babcock,* Deputy Public Defender, Salem, argued the cause and filed a brief for appellant.

*Frank D. Knight,* District Attorney, Corvallis,

argued the cause for respondent. With him on the brief was Harold M. Sliger, Deputy District Attorney, Corvallis.

Before PERRY, Chief Justice, and McALLISTER, SLOAN, O'CONNELL, GOODWIN, DENECKE and HOLMAN, Justices.

HOLMAN, J.

Defendant appealed from a judgment of conviction of knowingly uttering and publishing a forged bank check. He contends the court erred in denying his motion for a judgment of acquittal. The issue in the case is whether there is evidence, other than that of an accomplice, which tended to connect defendant with the commission of the crime as required by ORS 136.550.[①]

A Miss Nissen testified that on November 29, 1966, defendant gave her the forged check in question and had her cash it.. She said she endorsed the payee's name, cashed it and gave the proceeds to defendant. In addition, she told the following story. On three previous occasions she had cashed forged checks for defendant and had given him either all or part of the proceeds. On still another occasion, November 16, 1966, she attempted to cash a forged check at McGarry's store in Corvallis while defendant drove around the parking lot waiting for her. She was unsuccessful in cashing it because she had insufficient identification. At that time they were using a lilac-colored Chevrolet automobile belonging to a Mrs. Berry. From McGarry's they proceeded to another store named Food-

---

[①] "136.550. A conviction cannot be had upon the testimony of an accomplice unless it is corroborated by other evidence that tends to connect the defendant with the commission of the crime. The corroboration is not sufficient if it merely shows the commission of the crime or the circumstances of the commission."

land and she cashed a check on her own account in which they both knew there were no funds. She left the store and went to the car in the parking lot where defendant awaited her. She gave him part of the proceeds and he then went into the store and purchased beer.

She further testified that she had been keeping company with the defendant for a long period of time, that she had been intimate with him and he was possibly the father of her illegitimate child.

A Mrs. Schwartz testified that on November 16 she was operating a checker's stand at McGarry's when Miss Nissen came to the store and attempted to cash a check at the checker's stand next to hers. Mrs. Schwartz was just terminating her day's work and she left McGarry's and went to Foodland to get an item that was not carried at McGarry's. After she arrived at Foodland she saw Miss Nissen get out of a lilac-colored Chevrolet automobile with a male person in it and go into the store. She saw Miss Nissen writing a check in the store. After leaving the store Mrs. Schwartz walked by the lilac automobile and saw defendant, whom she recognized from previous acquaintance, sitting in it. Thereafter she observed Miss Nissen return to the vehicle and saw the defendant leave it and start towards the store.

The defendant testified that at no time had he requested Miss Nissen to cash any checks nor had he even been with her when she had done so. More particularly he testified that he had not been with her in Corvallis in a lilac-colored automobile on November 16. To the contrary, he stated that at the time the check was cashed on November 16, he had been at a party at a Mrs. Berry's home and while there he had observed Miss Nissen borrow Mrs. Berry's car. He remembered

the specific date because it was exactly two months from the time he had met Mrs. Berry and they were having a party to celebrate the occasion.

Mrs. Berry was thereafter called by the state as a witness and testified that there was an occasion at about the time in question when defendant was at her home but that such parties were not normally held in the middle of the week. November 16 was a Wednesday. Specifically she testified:

"Q Now, Mr. Carroll has testified that he—that there was a party at your place to celebrate the second anniversary of his meeting with you in September. Do you recall such an anniversary party? That is, not an anniversary—I guess it would be a month anniversary or something. The second month after his first meeting with you.

"A No. I can't remember."

■ The fact that defendant was seen at the Foodland store with Miss Nissen on November 16 is not sufficient to corroborate his criminal involvement with the forged check she cashed on the 29th. Before independent evidence of defendant's association with an admitted accomplice will furnish the corroboration necessary, it must appear that the defendant and the accomplice were together at a place and under circumstances not likely to have occurred unless there was criminal concert between them. *State v. Caldwell*, 241 Or 355, 360, 405 P2d 847 (1965); *State v. Clipston*, 237 Or 634, 638-639, 392 P2d 772 (1964); *State v. Townsend*, 19 Or 213, 215, 23 P 968 (1890). The fact that defendant awaited in an automobile on the store's parking lot while Miss Nissen cashed an insufficient funds check on her own account is not such evidence as would lead a reasonable person to believe that defendant criminally participated in the cashing of the check because this is a circumstance that is likely to

occur without there having been any concert between them. The evidence being insufficient to connect defendant criminally with the November 16 occasion, it cannot so connect him in any way with the November 29 occasion with which he is charged.

However, this is not the entire evidence of corroboration. Defendant chose to testify and while so doing testified to his whereabouts and actions on November 16. There was evidence from which the jury could have found that defendant intentionally lied concerning his activities on that day.

■ A party's falsehood or other fraud in the preparation and presentation of his cause is an indication of his consciousness that his case is weak or unfounded and from that consciousness may be inferred the cause's lack of truth and merit. 2 Wigmore, Evidence, § 278 (3d ed). In a criminal case such conduct is an indication of his consciousness of guilt and from that consciousness his actual guilt can be inferred. *State v. Paquin*, 229 Or 555, 563-564, 368 P2d 85 (1962); *State v. LaPlant*, 149 Or 615, 621-622, 42 P2d 158 (1935). In the cited section of Wigmore the following language is quoted from *Com. v. Webster*, 5 Cush. 295, 316: "To the same head may be referred all attempts on the part of the accused to suppress evidence, to suggest false and deceptive explanations, and to cast suspicion without just cause on other persons,—all or any of which tend somewhat to prove consciousness of guilt, and, when proved, to exert an influence against the accused. * * *" The use of perjury in an attempt to prove an alibi admits of the usual broad inference from fraud. Wigmore, § 279, *supra*, at 126. There being evidence from which the jury could find that defendant lied concerning his alibi for November 16, there was evidence from which his guilt could be inferred and, there-

fore, there was some evidence, though slight, other than the testimony of the accomplice, which tended to connect defendant with the crime for which he was being tried. For authority holding such evidence of guilt sufficient to constitute corroboration see *State v. Paquin, supra*, and 7 Wigmore, Evidence, § 2059, p 327, n 7 (3d ed).

It can be argued with some considerable force that it is as likely that defendant was lying because of his sense of guilt concerning the occasion on the 16th as it was that he was lying because of any sense of guilt concerning the occurrence on the 29th, and that the testimony was relevant to a collateral matter not connected with the crime in question. Defendant chose to deny any association with Miss Nissen when she cashed any checks, including the one on the 16th at which time he testified he was elsewhere. If his testimony were true about his activities on the 16th it is unlikely anyone would believe Miss Nissen concerning his implication on the 29th. Therefore, his testimony was not so irrelevant to the issue that no inference of guilt could be properly drawn from his fabrication of an alibi for the 16th. The factor determining whether the inference of guilt can properly be drawn is whether the fabricated evidence, if believed, would place defendant in a position that he would more likely be found innocent of the charge for which he is being tried. The inference of lack of truth and merit (guilt in a criminal case) which arises from the use of fraudulent testimony does not apply itself necessarily to any specific fact in defendant's case but against defendant's case in its entirety. Wigmore, § 278, *supra* at 120.

There being sufficient corroborative evidence, the judgment of the trial court is affirmed.

SLOAN, J., dissenting.

In *State v. Bonner*, 1965, 241 Or 404, 407, 408, 406 P2d 160, 161, 162, the following appears:

"The defendant also claims the court erred in the giving of the following instruction:

'False and contradictory statements made by a defendant, if any, are circumstances which may be taken into consideration by you in determining the guilt or innocence of a defendant.'

"In addition to the above instruction, the court also gave the following general statutory instruction relative to the same matter:

'A witness shown to be false in one part of his or her testimony is to be distrusted in others. Therefore, if you find that any witness has wilfully sworn falsely in any part of his or her testimony, you have a right to distrust the other portions thereof.'

"The challenged instruction was erroneous and violated ORS 17.250(3) in two respects. It stated that false statements of the defendant could be taken into consideration in determining whether he was guilty or innocent instead of whether he was telling the truth in the rest of his testimony, as the statute provides. Also, it included contradictory statements instead of limiting itself, as required by statute, to false statements. The language of the statute has been construed as not meaning a mistaken witness or one who is confused or hazy in recollection but rather one who intentionally disregards the truth. Simpson v. Miller, 57 Or 61, 110 P 485; Ireland v. Mitchell, 226 Or 286, 359 P2d 894. * * * *"

The *Bonner* decision cannot be reconciled with the majority opinion. The present decision would require the giving of the first quoted instruction in every case where any part of a defendant's testimony is refuted. The majority now would permit any apparent falsity in a defendant's testimony to be treated as evidence of

guilt. This is the inescapable result of the majority decision. I do not believe that Wigmore, or the other authorities cited by the majority, intended such a result.

The statutory penalty for false testimony, ORS 17.250(3)①, should be the limit of its convictable weight and the instruction usually given, as quoted above, pursuant to the statute, is all that should be stated in this respect.

DENECKE, J., dissenting.

I dissent for the reasons stated in Mr. Justice Sloan's dissenting opinion and desire to state an additional ground for my dissent.

The defendant was charged with cashing a forged check on November twenty-ninth through the agency of his accomplice, Miss Nissen. The accomplice testified that she also tried to cash a forged check for the defendant on November sixteenth. The defendant testified that he was not with Miss Nissen on November sixteenth. The majority has decided that the falsity of defendant's testimony of what transpired on November sixteenth is sufficient evidence to corroborate the accomplice's testimony of what happened on the twenty-ninth.

In my opinion, this possibly false testimony, standing alone, is not sufficient corroborating evidence.

The editor of 1 Wharton, Criminal Evidence (12th ed), 268, § 143, after observing that false testimony may be considered, along with other evidence, states the law to be:

"* * * Taken by itself, however, such proof is not inconsistent with innocence, since an innocent,

---

① "That a witness false in one part of his testimony is to be distrusted in others."

though weak and timid, man, sensible that appearances are against him, and duly weighing the danger of his being detected in clandestine attempts to stifle proof, may naturally resort to this mode of averting danger."

Mr. Chief Justice Shaw made the same observation 100 years earlier in *Commonwealth v. Webster*, 59 Mass 295, 316-317 (1850).

*State v. Lane*, 3 Utah2d 23, 277 P2d 820 (1954), is a check case and holds in accordance with this view:

"Respondent further contends that the defendant's denial of any acquaintance with the accomplice Hanley is a strong inference of guilt, particularly in view of his later admission that he did know Hanley.

"The fact that defendant lied does not prove him guilty, nor does the fact that he falsely denied his acquaintance with Hanley corroborate the testimony of the accomplices. * * *" 3 Utah2d at 28.

GOODWIN, J., joins in this dissent.