Argued and submitted February 27, reversed July 2, 2008

# STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

# IRAN DENNIS FOSTER,
*Defendant-Appellant.*

Jackson County Circuit Court
030397BFE; A129830

188 P3d 440

David Ferry, Deputy Public Defender, argued the cause for appellant. With him on the brief were Ingrid Swenson, Executive Director, and Peter Gartlan, Chief Defender, Office of Public Defense Services.

Jonathan Fussner, Assistant Attorney General, argued the cause for respondent. On the brief were Hardy Myers, Attorney General, and Mary H. Williams, Solicitor General.

Before Landau, Presiding Judge, and Ortega, Judge, and Carson, Senior Judge.

ORTEGA, J.

## ORTEGA, J.

Defendant appeals a judgment of conviction of delivery of a controlled substance, *former* ORS 475.992 (2003), *renumbered as* ORS 475.840 (2005); conspiracy to commit delivery of a controlled substance, ORS 161.450; and possession of a controlled substance, *former* ORS 475.992. On appeal, defendant contends that the trial court erred in denying his motion for a judgment of acquittal on all charges because the only evidence of his involvement in the crimes was the testimony of an accomplice witness, Guy. According to defendant, the other evidence cited by the state does not provide sufficient corroboration of the accomplice testimony to sustain the conviction, as is required under ORS 136.440(1). Viewing the evidence in the light most favorable to the state to determine whether a rational trier of fact could conclude that the state met its burden to prove beyond a reasonable doubt the elements of the charged offenses, *State v. Torres*, 207 Or App 355, 359, 142 P3d 99 (2006), we reverse.

Pursuant to a warrant, police searched an apartment, leased to Guy, where Guy and defendant were living. They found a large quantity of expensive clothing and shoes inside the apartment, but no cocaine, drug residue, packaging materials, cutting agents, or drug paraphernalia. Police found two digital scales; defendant's fingerprint was found on one of the scales, and he admitted owning the other scale. Neither scale contained any drug residue. Also, police did not find any drugs on defendant, whom they searched after stopping him in a rental car.

Police employed a dog trained in drug detection in conjunction with their search of the apartment, but the dog did not alert on anything except a bag containing $6,000 in cash. Defendant admitted that the bag and the money were his. There were no drugs in the bag, only a residual odor of drugs.[1] (On cross-examination, a detective who testified at trial acknowledged having heard of studies indicating that most money in circulation is contaminated with drug residue.)

---

[1] The dog was trained to detect five types of drugs, including cocaine (the drug at issue in this case), but could not indicate what kind of drug it detected.

A police detective who participated in the search testified that drug dealers often possess large amounts of cash from drug sales and that the amount found in the apartment was "[v]ery commonplace" in drug investigations. He also testified that dealers often possess scales and packaging materials and often use rental cars because they are harder to track in an investigation. The detective acknowledged, however, that owning nice clothing, renting a car, and possessing large amounts of cash are not necessarily indications that one is dealing drugs.

While police were searching the apartment, Guy drove up in her car. Although defendant occasionally drove Guy's car, he had no ownership interest in it, nor did he have a key to the car. Police searched the car and found nearly 23 grams of cocaine, which had been broken up and packaged for sale. The packaging was not tested for fingerprints.

Guy was charged as a codefendant and pleaded guilty on the morning of trial. According to Guy, defendant had asked her to pick up the cocaine for him. She retrieved the drugs, which were already packaged for sale, without giving any money to the supplier. She did not know of any connection between the money that defendant had at the apartment and any drugs. However, she testified that she had suspected that defendant was dealing drugs because she had observed that he "always had a lot of money with him," although he did not have a job, and that people frequently stopped by the apartment to see him for very brief visits.

When asked about the scales found in the apartment, Guy testified that "[n]ormally I would say they were used to weigh drugs, but I never saw [defendant] weigh drugs on these scales. He weighed his jewelry on it." Defendant and other witnesses also testified that he weighed jewelry that he had purchased to make into new jewelry. A jury could discredit that testimony, but there was no evidence of any other observations of defendant's actual use of the scales.

After the state rested, defendant moved for a judgment of acquittal, contending that the evidence other than Guy's testimony was insufficient to connect defendant to the crimes. After some discussion, the trial court denied defendant's motion, explaining that, "looking at the evidence in the

light absolutely most favorable to the State, I guess it connects or tends to connect, just the fact that he's living there, the fact of the scales, the touching [of] the scales, the money, the dog hitting on the money." At the close of all the evidence, defendant moved for "a directed verdict." The trial court denied that motion as well, noting that "it's close," but finding the evidence sufficient to go to the jury.

On appeal, defendant renews his argument that the trial court should have entered a judgment of acquittal because the state failed to provide evidence corroborating Guy's testimony that tended to connect defendant to the drugs found in Guy's car and thus to the charged crimes. In defendant's view, evidence that defendant was living with Guy was not enough to indicate that he was engaged in criminal activity with her. Nor did the scales tend to connect defendant to the drugs. There was no connection between the cocaine, which was already packaged when Guy retrieved it from a third party, and the scales, which contained no drug residue, and no evidence that defendant ever used the scales for weighing drugs. The cash was not connected to the drugs; Guy testified that no money changed hands when she picked up the drugs, and no evidence linked the money to the charged crimes.

The state acknowledges that the corroboration evidence was slight, but argues that it was sufficient. The state relies on evidence that the drug-detecting dog alerted on the bag of cash and that defendant's fingerprint was on the digital scale, coupled with testimony that drug dealers often use such scales to weigh drugs, have large amounts of cash, and use rental cars. In the state's view, that evidence demonstrates "that defendant could have been engaged in drug transactions and, therefore, the evidence supports the accomplice's testimony that defendant asked her to pick up the drugs and bring them to him." We conclude that the evidence was insufficient to meet the statutory standard for corroboration.

ORS 136.440(1) provides:

"A conviction cannot be had upon the testimony of an accomplice unless it is corroborated by other evidence that tends to connect the defendant with the commission of the

offense. The corroboration is not sufficient if it merely shows the commission of the offense or the circumstances of the commission."

Under that statute, the corroboration must fairly and legitimately tend to connect the defendant with the crime, "so that it can in truth be said that his conviction is not based entirely upon evidence of the accomplice[s]." *Torres*, 207 Or App at 360 (citations and internal quotation marks omitted; brackets in *Torres*). The corroboration is sufficient "if there is some evidence, however slight, tending to connect the defendant with the crime." *State v. Walton*, 311 Or 223, 242, 809 P2d 81 (1991) (citing *State v. Caldwell*, 241 Or 355, 361, 405 P2d 847 (1965)). The corroborating evidence may be circumstantial and need not independently corroborate each material fact required to sustain a conviction. *State v. Boone*, 213 Or App 242, 247-48, 160 P3d 994, *adh'd to as modified on recons*, 215 Or App 428, 169 P3d 1274 (2007); *see also Walton*, 311 Or at 243. A defendant's association with the accomplice, without more, is not enough to corroborate the accomplice's testimony. "Before independent evidence of [a] defendant's association with an admitted accomplice will furnish the corroboration necessary, it must appear that the defendant and the accomplice were together at a place and under circumstances not likely to have occurred unless there was criminal concert between them." *State v. Carroll*, 251 Or 197, 200, 444 P2d 1006 (1968) (citations omitted). If any evidence other than the accomplice's testimony tends to connect the defendant with the commission of the crime, then the trier of fact decides whether the accomplice's testimony has been corroborated. *Walton*, 311 Or at 243.

██ Although the state suggests that evidence tending to connect defendant to any drug crime would be sufficient to corroborate Guy's testimony, ORS 136.440(1) requires that the corroborating evidence tend to connect the defendant with "the commission of the offense," not just the commission of *an* offense. The Supreme Court has long held that the corroborating evidence "must connect, or tend to connect, the defendant with the commission of the crime charged." *State v. Brake*, 99 Or 310, 313, 195 P 583 (1921); *see also State v. Oster*, 232 Or 389, 391, 376 P2d 83 (1962) ("The heart of the rule is simply that there must be evidence, independent of

the evidence of the accomplice, which would lead reasonable minds to a belief that the defendant criminally participated in the crime charged."); *Torres*, 207 Or App at 362-63 (evidence that the defendant fled when an officer was attempting to arrest him in connection with an unrelated theft did not demonstrate that the defendant had engaged in the charged crimes). Accordingly, we consider the corroborating evidence to determine whether it connects or tends to connect defendant with delivery or possession or a conspiracy to commit delivery of the drugs found in Guy's car.

There was no evidence that the money, scales, or rental car were used in or obtained through the charged crimes such that defendant's possession of those items could connect him with the crimes. *Cf. Boone*, 213 Or App at 253 (concluding that the defendant's aiding and abetting in burglary was corroborated by his possession of items consistent with those stolen during the burglary). Guy knew of no connection between the money and the drugs and testified that no money changed hands when she picked up the drugs. Although the drug-detecting dog alerted on the money, that evidence—at most—might tend to connect defendant to some drugs, not to the possession or delivery of or conspiracy to deliver the drugs found in Guy's car. Indeed, although the state initially sought forfeiture of the money as "proceeds or [an] instrumentality of one or more of the [charged] crimes," the state conceded at trial that the evidence was insufficient to support forfeiture. Similarly, there was no evidence that defendant used the scales or a rental car for drug activity, let alone for activity connected with the charged crimes.

Nor can we find corroboration of the charged crimes in the evidence that drug dealers often have large amounts of cash, possess scales, and use rental cars. Although defendant possessed some items that drug dealers often possess, the mere possession of those items is insufficient to tend to connect defendant with the charged crimes. Rather, the other evidence offered in this case is analogous to evidence that merely shows an association between a defendant and accomplices, without evidence that the circumstances of the association would be unlikely to arise except for the criminal activity.

In *State v. Jones*, 2 Or App 42, 465 P2d 719 (1970), for example, the defendant was convicted of burglary after two accomplices testified that he was one of the people who burglarized a store one night. We found the other evidence—that the store was burglarized during the night; that the defendant, a long-time customer, had been in the store that evening; and that the defendant and accomplices were in the vicinity an hour or so before the burglary—to be insufficient to corroborate the accomplice testimony. *Id.* at 43-45. There was nothing suspicious or unusual about the defendant's association with the accomplices. Because the defendant and the accomplices were all friends and the store was near their homes, they "were not together 'under circumstances not likely to have occurred unless there was criminal concert between them.' " *Id.* at 45 (quoting *Carroll*, 251 Or at 200). Here, likewise, defendant's possession of cash, scales, and a rental car—without more—is not a circumstance unlikely to have occurred unless he was engaging in possessing, delivering, or conspiring to deliver the cocaine found in Guy's car.

Under the circumstances, we cannot say that defendant's conviction was not based entirely upon Guy's testimony. It follows that the trial court erred by denying defendant's motion for a judgment of acquittal.

Reversed.