Argued and submitted August 13, 2010, affirmed April 27, 2011

In the Matter of B. M. L.,
a Youth.

STATE ex rel JUVENILE DEPARTMENT
OF BENTON COUNTY,
*Respondent,*

*v.*

B. M. L.,
*Appellant.*

Benton County Circuit Court
0870061;
Petition Number 082342;
A140986

256 P3d 132

Christa Obold-Eshleman argued the cause and filed the briefs for appellant.

Inge D. Wells, Senior Assistant Attorney General, argued the cause for respondent. With her on the brief were John R. Kroger, Attorney General, and Jerome Lidz, Solicitor General.

Before Haselton, Presiding Judge, and Armstrong, Judge, and Duncan, Judge.

ARMSTRONG, J.

**ARMSTRONG, J.**

Youth appeals judgments finding him within the jurisdiction of the juvenile court for acts that would constitute the crimes of recklessly endangering another person, ORS 163.195, and criminal mischief in the second degree, ORS 164.354, if committed by an adult.[1] He asserts that the juvenile court erred "because the evidence consisted only of accomplice testimony corroborated solely by the youth's presence with the accomplice shortly after the incident." We affirm.

We review the record *de novo*, ORS 419A.200(6), ORS 19.415(3) (2007),[2] giving due deference to the credibility determinations made by the juvenile court judge. *State ex rel Juv. Dept. v. Smith*, 185 Or App 197, 227, 58 P3d 823 (2002), *rev den*, 335 Or 402 (2003); *State ex rel Juv. Dept. v. Pfaff*, 164 Or App 470, 486, 994 P2d 147 (1999), *rev den*, 331 Or 193 (2000). The state has the burden to prove the facts alleged in the petition beyond a reasonable doubt. ORS 419C.400(2). Thus, we review the record *de novo* to determine whether the allegations of the delinquency petition have been proved beyond a reasonable doubt.

The juvenile court's jurisdictional finding arose out of the following incident. At about 10:30 p.m. on August 7, 2008, the victim was driving home from work when something hit and shattered the windshield of her car. Pieces of glass fell into her lap and onto the seat of the car. At the time, she was heading west along Philomath Boulevard in Corvallis, just past 15th Street; the soccer fields of the Oregon State University campus abutted the road on her right. She immediately pulled over onto the shoulder and called her husband to tell him what had happened. She also got out of the car and "looked around to see if there was anything on the road" and found a rock, "about the size of a tennis ball."[3]

---

[1] The juvenile court, inexplicably, entered two judgments of jurisdiction based on the same conduct.

[2] The notice initiating the appeal in this case was filed before the effective date of Oregon Laws 2009, chapter 231, section 2 (June 4, 2009), which amended ORS 19.415 to change the *de novo* standard of review in equitable proceedings. We therefore apply the 2007 version of ORS 19.415.

[3] The rock was later given to the police and admitted as an exhibit at the adjudicatory hearing.

The victim's husband, meanwhile, "jumped in [his] car" and drove to the scene; he called the police while en route. As he drove by the soccer field on 15th Street—while still on the phone with the 9-1-1 dispatcher—he saw two young men "walking * * * out of the grass." He was in visual distance of his wife's car at that time. He "slowed to look at them just to take note, and they looked at me and looked nervous and started walking faster." He described the two people and what they were wearing to the 9-1-1 dispatcher. He continued on and arrived where his wife was parked within "five to ten minutes" after the incident had occurred. After determining that the car was drivable, the victim drove the car home (about 20 blocks) and waited for her husband to return.

The victim's husband then drove back east on Philomath Boulevard and turned on 15th Street to see if he could discover where the two young men had gone. When he did not see them, he turned up Western to head home. A couple of blocks away, near Reser Stadium, he spotted the same two young men whom he had seen coming out of the soccer field earlier. He called the police and pulled over in the stadium parking lot to wait for them to arrive.

While he was waiting, the two young men sat down and were talking in front of the driveway to an apartment complex on the corner of 26th and Western, directly across from the Reser Stadium parking lot. The police arrived and interviewed the two men, later identified as youth and Jackson-Grixgby, then age 18. Youth denied knowing anything about the rock-throwing incident. Jackson-Grixgby initially denied any involvement, but, when the officer asked him again—after explaining that police had the rock that had been used to break the window and explaining the capabilities of the crime lab related to DNA and fingerprint tests—he admitted that he was the person responsible for breaking the window.

At the hearing on the petition, Jackson-Grixgby testified that he and youth were "good friends" and that they spent time together "[a]lmost every day." He said that he lived in an apartment less than a mile from Reser Stadium and youth lived about five blocks from there. As to the events

of August 7, he testified that he had ridden his bike to youth's house where the two had "hung out and played videogames" until they decided to go to a market to get some food. From the market, they went over to a gravel parking lot near the soccer field. There, they sat by a sand pile and "ate food and hung out" until, at some point, they "decided to throw rocks at a car." They both collected rocks from the gravel parking lot and carried them over to the other side of a fence by the highway. According to Jackson-Grixgby, they both then began throwing rocks at passing cars, while standing about five feet from the highway and hiding behind a bush. They threw rocks at several cars until they realized, by the sound, that one of the cars had been hit. At that point, they ran across the soccer field to Western. They stopped to rest on Western across the street from the parking lot at Reser Stadium, where the police saw them and began asking them about the rock-throwing incident. Jackson-Grixgby testified that he did not know whether it was his rock that had hit the car window. He also testified that he had been convicted, based on a guilty plea, of criminal mischief and reckless endangerment based on the incident.

The state filed a petition for jurisdiction over youth based on acts that, if committed by an adult, would constitute recklessly endangering another person, ORS 163.195,[4] and second-degree criminal mischief, ORS 164.354.[5] At the close

---

[4] Under ORS 163.195(1), "[a] person commits the crime of recklessly endangering another person if the person recklessly engages in conduct which creates a substantial risk of serious physical injury to another person."

[5] ORS 164.354 (2007), then in effect, provided, in part:

"(1) A person commits the crime of criminal mischief in the second degree if:

"(a) The person violates ORS 164.345, and as a result thereof, damages property in an amount exceeding $100; or

"(b) Having no right to do so nor reasonable ground to believe that the person has such right, the person intentionally damages property of another, or, the person recklessly damages property of another in an amount exceeding $100."

ORS 164.345(1), in turn, provides:

"A person commits the crime of criminal mischief in the third degree if, with intent to cause substantial inconvenience to the owner or to another person, and having no right to do so nor reasonable ground to believe that the person has such right, the person tampers or interferes with property of another."

of the state's evidence, youth moved for a dismissal.[6] He contended that, because there was inadequate corroboration of Jackson-Grixgby's accomplice testimony under ORS 138.440, the evidence was insufficient to support jurisdiction. The juvenile court disagreed, denied youth's motion, and found youth to be within the jurisdiction of the court for the acts alleged in the petition.

On appeal, youth renews the argument that he made below. Relying primarily on *State v. Carroll*, 251 Or 197, 444 P2d 1006 (1968), he asserts that the evidence corroborating Jackson-Grixgby's testimony is insufficient because it merely shows that youth was with Jackson-Grixgby close in time and place to the incident without evidence that the two " 'were together at a place and under circumstances not likely to have occurred unless there was criminal concert between them.' " (Quoting *Carroll*, 251 Or at 200.) The state counters that the evidence is sufficient; it also argues, for the first time, that ORS 136.440 is inapplicable in juvenile delinquency proceedings, and that we should affirm the juvenile court's ruling on that alternative basis.

We need not reach the state's alternative basis for affirmance, because, even assuming that ORS 136.440 applies (and that Jackson-Grixgby is an accomplice), we conclude that there was sufficient corroborating evidence to connect youth with the acts alleged in the petition.

ORS 136.440 provides, in part:

"(1) A conviction cannot be had upon the testimony of an accomplice unless it is corroborated by other evidence that tends to connect the defendant with the commission of the offense. The corroboration is not sufficient if it merely shows the commission of the offense or the circumstances of the commission."

Thus, "[i]f the corroboration must be supplemented by testimony by the accomplices in order to connect the defendant with the crime it is insufficient." *State v. Caldwell*, 241 Or

---

[6] Youth actually moved for a judgment of acquittal. However, in a juvenile delinquency proceeding where our review is *de novo*, the correct procedural mechanism to challenge the sufficiency of evidence is a motion to dismiss; we therefore treat youth's motion as the latter motion. *See State ex rel Juv. Dept. v. Deford*, 177 Or App 555, 577 n 13, 34 P3d 673 (2001).

355, 360, 405 P2d 847 (1965). Rather, to sustain a conviction, the testimony of an accomplice must be corroborated by evidence "tend[ing] to connect the defendant with the commission of the offense"; evidence "merely show[ing] the commission of the offense or the circumstances of the commission" is not enough. ORS 136.440(1). We recently synthesized the relevant principles as follows:

> "Under [ORS 136.440], the corroboration must fairly and legitimately tend to connect the defendant with the crime, 'so that it can in truth be said that his conviction is not based entirely upon evidence of the accomplices.' [*State v.*]*Torres*, 207 Or App [355, 360, 142 P3d 99 (2006)] (citations and internal quotations [and brackets] omitted * * *). The corroboration is sufficient 'if there is some evidence, however slight, tending to connect the defendant with the crime.' *State v. Walton*, 311 Or 223, 242, 809 P2d 81 (1991) (citing *State v. Caldwell*, 241 Or 355, 361, 405 P2d 847 (1965)). The corroborating evidence may be circumstantial and need not independently corroborate each material fact required to sustain a conviction. *State v. Boone*, 213 Or App 242, 247-48, 160 P3d 994, *adh'd to as modified on recons*, 215 Or App 428, 169 P3d 1274 (2007); *see also Walton*, 311 Or at 243. *A defendant's association with the accomplice, without more, is not enough to corroborate the accomplice's testimony. 'Before independent evidence of a defendant's association with an admitted accomplice will furnish the corroboration necessary, it must appear that the defendant and the accomplice were together at a place and under circumstances not likely to have occurred unless there was criminal concert between them.' State v. Carroll*, 251 Or 197, 200, 444 P2d 1006 (1968) (citations [and brackets] omitted). If any evidence other than the accomplice's testimony tends to connect the defendant with the commission of the crime, then the trier of fact decides whether the accomplice's testimony has been corroborated. *Walton*, 311 Or at 243."

*State v. Foster*, 221 Or App 108, 113, 188 P3d 440 (2008) (emphasis added).

■ Here, the corroboration evidence includes testimony that the victim's car's windshield was shattered by something hitting it and the tennis-ball sized rock that was found immediately thereafter near the victim's car. That evidence, however, tends to "merely show[ ] the commission of the

offense or the circumstances of the commission"; it does not "tend[ ] to connect" youth with commission of that crime. ORS 136.440(1). Accordingly, it alone is insufficient to corroborate Jackson-Grixgby's accomplice testimony.

However, the record also includes the victim's husband's testimony that he saw youth with Jackson-Grixgby five to 10 minutes later and very close to the location where the windshield-shattering incident took place; that youth and Jackson-Grixgby appeared nervous and began walking faster when the victim's husband slowed down to look at them; and that he saw them again not long afterward sitting in front of an apartment building a few blocks away.

Youth contends that that evidence is not sufficient under ORS 136.440, focusing on the following statement from *Carroll*:

"Before independent evidence of defendant's association with an admitted accomplice will furnish the corroboration necessary, it must appear that the defendant and the accomplice were together at a place and under circumstances not likely to have occurred unless there was criminal concert between them."

251 Or at 200. In youth's view, that standard has not been satisfied in this case because, given other evidence that youth and Jackson-Grixgby were friends; that the location was near their homes; and that they had engaged in other, benign activities in the area that evening, the record demonstrates that youth and his alleged accomplice "were together in the location of the incident under circumstances that *were* likely to have occurred for a reason other than criminal activity." (Emphasis in original.)

Youth gives *Carroll* more weight than it can bear. In *Carroll*, the defendant was convicted of uttering and publishing a forged bank check. 251 Or at 198. His accomplice testified that the defendant had given her the forged check and had her cash it, which she did and gave the defendant the proceeds. She also testified that, on a different occasion roughly two weeks earlier, she had attempted to cash another forged check at a store while the defendant drove around the parking lot waiting for her. When she was unsuccessful, the two then went to another store; the defendant

again waited for her in the car—a lilac-colored Chevrolet—in the parking lot, while she went into the store. There, the accomplice cashed an insufficient funds check on her own account. A witness testified that she had seen the defendant and the accomplice together on that date in a lilac-colored car in that store's parking lot. The witness also testified that she had seen the accomplice in the store writing a check. *Id.* at 198-99.

The Supreme Court concluded that the witness's testimony was insufficient to corroborate the defendant's criminal involvement with the forged check that the accomplice had cashed on the later date. *Id.* at 200. In that context, the court explained the statement quoted above, reasoning:

"The fact that defendant awaited in an automobile on the store's parking lot while [the accomplice] cashed an insufficient funds check on her own account is not such evidence as would lead a reasonable person to believe that defendant criminally participated in the cashing of the check because this is a circumstance that is likely to occur without there having been any concert between them. The evidence being insufficient to connect defendant criminally with the [earlier] occasion it cannot so connect him in any way with the [later] occasion with which he is charged."

*Id.* at 200-01. Thus, the corroborating evidence that the court rejected in *Carroll*—that of association between the defendant and the accomplice—occurred on a date nearly two weeks before the incident for which the defendant was charged and at a separate location. The only evidence of the association also related to a different event than the event leading up to the crime for which the defendant was charged. And, the circumstances of that event—the accomplice cashing a bad check on her *own* account—the court found, was reasonably likely to occur without any involvement by the defendant. Because it thus did not tend to connect the defendant with that crime, the court concluded, it certainly could not connect him to the crime for which he was charged. It was under those circumstances that the court concluded that evidence of association between the defendant and an admitted accomplice was insufficient without evidence that it was also

unlikely for them to be together unless there was criminal concert between them.

Likewise, in *State v. Jones*, 2 Or App 42, 465 P2d 719 (1970), we held that the evidence was insufficient to corroborate the admitted accomplices' testimony that they and the defendant had burglarized a retail store. The evidence offered to corroborate the accomplices' testimony showed only that a burglary had been committed; that the defendant, who regularly visited the store, had been in the store earlier on the evening of the burglary; and that he was seen with the accomplices and others still in the general vicinity later that same evening. *Id.* at 43. We noted that there was "no corroborative evidence showing that defendant was in possession of the fruits of the crime, or that the accomplices were at the scene of the crime." *Id.* at 43-44. Citing *Carroll*, we concluded that there was "nothing suspicious or unusual about the place or circumstances" of the association—the individuals were all friends and near some of their homes, *Jones*, 2 Or App at 45—thus, the defendant and the accomplices were "not together 'under circumstances not likely to have occurred unless there was criminal concert between them.'" *Id.* at 44 (quoting *Carroll*, 251 Or at 200). *See also Torres*, 207 Or App at 362 (witness's testimony that he observed the defendant in an accomplice's company on one occasion insufficient to show that the defendant and the accomplice "were jointly engaged in criminal conduct on that occasion, much less that they jointly engaged in the criminal conduct at issue" in the case).

The circumstances here are markedly different. In addition to evidence that the offenses were committed (*i.e.*, the victim's testimony and the rock), the victim's husband testified that he saw youth and his accomplice leaving a field very close to the scene of the crime approximately five minutes after it occurred. It was late at night, and it can reasonably be inferred from the victim's husband's testimony that no one else was around. Moreover, there was evidence that youth appeared nervous and began walking faster when he saw the victim's husband. In short, the corroboration in this case is not dependent on mere association between youth and Jackson-Grixgby, such that it is necessary to also show

that the circumstances of their association were not likely to have occurred but for some criminal activity.[7] In other words, the fact that youth and Jackson-Grixgby may have had other, noncriminal, reasons to be together at the time and place of the crime does not defeat the corroborative value of the evidence in these circumstances.

We conclude that, even if ORS 136.440 applies, the corroboration evidence in this case "fairly and legitimately tend[s] to connect [youth] with the commission of the crime[.]" *State v. Brake*, 99 Or 310, 314, 195 P 583 (1921); *accord Torres*, 207 Or App at 360; *see also Caldwell*, 241 Or at 361 (corroboration is sufficient "if there is some evidence, however slight, tending to connect the defendant with the crime"); *Walton*, 311 Or at 243 (corroboration evidence may be circumstantial and not every material fact required for conviction need be independently corroborated); *State v. Rose*, 45 Or App 879, 882, 609 P2d 875 (1980) (corroborating evidence need not be adequate in itself to support conviction if it fairly tends to connect the defendant with commission of the crime). Hence, the testimony of Jackson-Grixgby can properly be considered in this case. Moreover, the court necessarily found his testimony to be credible, a finding to which we defer. Based on Jackson-Grixgby's testimony and the other evidence in the record, we find that youth is within the jurisdiction of the court based on the offenses alleged in the petition.

Affirmed.

---

[7] *Cf. State v. Marling*, 19 Or App 811, 817, 529 P2d 957 (1974) ("Evidence of apparently innocent post-crime association is not made inadmissible by this rule [the rule articulated in *Carroll*]. The rule merely requires additional corroboration. Evidence of this nature may be relevant and admissible on the issue of a defendant's involvement in specific criminal activity, and may, when taken together with additional evidence tending to corroborate, provide the quantum of evidence required by the statute as a prerequisite to the use of evidence submitted by an accomplice." (Emphasis omitted.)); *see also Foster*, 221 Or App at 114 (evidence of mere possession of items that drug dealers often possess "is analogous to evidence that merely shows an association between a defendant and accomplices, without evidence that the circumstances of the association would be unlikely to arise except for the criminal activity").