Argued and submitted January 31, convictions on Counts 32, 33, 34, 35, 36, and 37 reversed; remanded for resentencing as to remaining convictions; otherwise affirmed June 6, appellant's petition for reconsideration filed July 11 and respondent's response to appellant's petition for reconsideration filed October 1 allowed by opinion October 17, 2007

See 215 Or App 428, _____ P3d _____ (2007)

## STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

## DAVID ALBERT BOONE,
*Defendant-Appellant.*

Yamhill County Circuit Court
CR020193B; A120775

160 P3d 994

Anne Fujita Munsey, Deputy Public Defender, argued the cause for appellant. With her on the brief were Peter A. Ozanne, Executive Director, and Peter Gartlan, Chief Defender, Legal Services Division, Office of Public Defense Services.

Benjamin R. Hartman, Assistant Attorney General, argued the cause for respondent. With him on the brief were Hardy Myers, Attorney General, and Mary H. Williams, Solicitor General.

Before Haselton, Presiding Judge, and Brewer, Chief Judge, and Armstrong, Judge.

BREWER, C. J.

## BREWER, C. J.

Defendant appeals a judgment convicting him of second-degree burglary (seven counts); first-degree theft (eight counts); felon in possession of a firearm (three counts); aggravated first-degree theft (one count); and unauthorized use of a vehicle (one count). His 18 assignments of error fall into four categories: (1) challenges to the sufficiency of the evidence with respect to his four second-degree burglary convictions involving a construction-site incident; (2) challenges to the sufficiency of the evidence with respect to a total of eight convictions for second-degree burglary, first-degree theft, and felon in possession of a firearm involving a storage unit incident; (3) a challenge to the sufficiency of the evidence with respect to his conviction for unauthorized use of a vehicle; and (4) five challenges to the trial court's sentencing dispositions. We reverse defendant's three convictions for felon in possession of a firearm and three of his first-degree theft convictions involving the same firearms, vacate the remaining sentences and remand for resentencing, and otherwise affirm.

Because the assignments of error that we reach challenge the sufficiency of the evidence to support defendant's convictions, we view the evidence presented at trial in the light most favorable to the state. *State v. Thompson*, 328 Or 248, 250, 971 P2d 879 (1999). Defendant was convicted of four burglaries at a construction site, resulting from an incident in which four storage trailers were broken into and tools were taken. Two trailers were pulled open with a backhoe. The others had their padlocks pried open. Each trailer was emptied of everything that could fit through the door, including approximately 60 tools worth $10,000 in total. Multiple wheelbarrow tracks led from the construction site across a field and into the parking lot of an adjacent store. Defendant's accomplice, Monk, testified that he broke into the trailers and took the tools by himself. However, he acknowledged that he loaded the tools into defendant's car in the parking lot at the store. Monk later testified that he could not recall whether defendant was with him when he took the tools, whether defendant waited for him, or whether defendant helped him load the car. Monk stated that it "made

sense" that defendant was with him, but Monk later reiterated that he acted alone.

Defendant told police that he had been with Monk at the store on the night that the trailers were burglarized and that Monk broke into the trailers while defendant was shopping at the store, but that Monk had not stolen anything at that point. Defendant described exactly how the trailers were broken into using a backhoe. He also stated to police that Monk had used defendant's car to transport the stolen tools. Defendant admitted that Monk brought the stolen tools to defendant's house, that defendant helped Monk sand the identifying marks off the tools, and that some of the stolen tools were delivered to another residence. Police found some of the tools at that residence while executing a search warrant. Defendant was charged with, and the jury convicted him of, second-degree burglary in connection with each of the four trailer break-ins at the construction site.

In an unrelated set of incidents, a storage unit was broken into on multiple occasions between November 2001 and December 2001. Various items were taken during each break-in. Monk testified that he went to the storage unit on four occasions. He stated that he was alone on the first occasion and did not take anything. He testified that defendant's wife was with him on the second occasion and various items were taken, including some collectable GI Joe dolls. Defendant was in jail at that time. Monk testified that he may have given defendant's wife one or two of the dolls. Police found some GI Joe dolls at defendant's residence a few months later.

After defendant was released from jail, Monk, defendant, and codefendant Goddard returned to the storage unit to take more items. According to Monk, Goddard drove him and defendant to the storage unit on the third occasion that Monk went there, and the three men loaded items into Goddard's vehicle. Monk testified that among the items taken were a gun safe, collectable GI Joe dolls, and a generator. Monk later changed his testimony, this time stating that he made a fourth trip to the storage unit for the sole purpose of taking the gun safe that he originally stated was taken on his third trip. Monk testified that only Goddard

accompanied him on that occasion. According to Monk, the gun safe later was opened at Goddard's residence, but Monk was not present at the time. The owner of the storage unit testified that it was broken into on two occasions, that the value of the property taken during the first break-in totaled less than $10,000, and that the total value of all of the property stolen exceeded $30,000.

With respect to the storage unit incident that, according to Monk, occurred on his third trip to the unit, defendant was charged with one count of second-degree burglary (Count 30); one count of first-degree theft of a stereo, GI Joe dolls, tools, and other personal property with a value in excess of $750 (Count 31); three counts of first-degree theft of firearms (Counts 32, 33, and 34); and three counts of felon in possession of a firearm (Counts 35, 36, and 37). Defendant was convicted of all eight of those charges.

Finally, defendant was convicted of unauthorized use of a vehicle involving a van (Count 39). When defendant, his wife, and Monk were burglarizing a storage container behind a store, they took more property than could fit in defendant's car. Monk told defendant where they could obtain a van to carry the remaining items. Defendant dropped Monk off at the location from which the van was stolen. Monk took the van, which was already full of tools, to defendant's home a couple of hours later. Defendant followed the van to Goddard's house and helped Monk unload the tools from the van.

Defendant was convicted of 20 offenses, and the trial court sentenced him to consecutive and concurrent sentences totaling 160 months' imprisonment.[1] As pertinent here, defendant challenges the trial court's failure to treat three of his convictions involving the storage unit incident as arising from the same criminal episode and, derivatively, the court's failure to apply the "shift to I" sentencing rule with respect to two of those convictions. Defendant also asserts that the trial court erred in imposing consecutive sentences on five of his convictions, in violation of his right to a jury trial under the

---

[1] Defendant was charged with 39 crimes. He pleaded guilty to three counts, and the jury convicted him of 17 counts. Some of the remaining counts were dismissed, and the jury acquitted defendant of the rest.

principles articulated in *Blakely v. Washington*, 542 US 296, 124 S Ct 2531, 159 L Ed 2d 403 (2004).

We first consider defendant's challenges to his convictions relating to the four construction-site burglaries. With respect to those convictions, defendant argues that the state was required to prove that he entered the storage trailers or that he aided and abetted the burglaries during the course of their commission. Defendant argues that the state failed to prove that he entered the trailers and that it failed to prove that he aided and abetted the crimes, because his participation in sanding off the identification markings on the stolen tools occurred after the crimes had been completed.

Monk's testimony constituted a significant part of the evidence of defendant's guilt of all of the charged offenses. Monk, who was indicted on the same counts as defendant, pleaded guilty to most of the charges in exchange for a recommendation of sentencing leniency. The trial court instructed the jury that Monk was an accomplice, as a matter of law, and that his testimony alone would be insufficient to convict defendant in the absence of corroborating evidence.[2] Because Monk provided key testimony in regard to each of the charges against defendant, we consider the sufficiency of his testimony, together with any corroborating evidence, to support defendant's convictions.

As to the nature of the corroborating evidence required by ORS 136.440, it must "fairly and legitimately tend[ ] to connect the defendant with the commission of the crime, so that it can in truth be said that his conviction is not based entirely upon evidence of the accomplice[s]." *State v. Norton*, 157 Or App 606, 609-10, 972 P2d 1198 (1998) (internal quotation marks omitted). Corroborating evidence may be circumstantial. *State v. Walton*, 311 Or 223, 243, 809 P2d

---

[2] ORS 136.440 provides, in part:

"(1) A conviction cannot be had upon the testimony of an accomplice unless it is corroborated by other evidence that tends to connect the defendant with the commission of the offense. The corroboration is not sufficient if it merely shows the commission of the offense or the circumstances of the commission.

"(2) As used in this section, an 'accomplice' means a witness in a criminal action who, according to the evidence adduced in the action, is criminally liable for the conduct of the defendant under ORS 161.155 and 161.165 * * *."

81 (1991). "Nor is it necessary that there be independent corroborating evidence with respect to every material fact necessary to be established to sustain a conviction" for a crime. *Id.* at 243; *see also State v. Rose,* 45 Or App 879, 882, 609 P2d 875 (1980) (corroborating evidence need not be adequate in itself to support conviction if it fairly tends to connect the defendant with commission of the crime). If there is some evidence, however slight or circumstantial, besides the accomplice's testimony that tends to connect the defendant to commission of the crime, then the issue of sufficient corroboration is for the jury. *Walton,* 311 Or at 243.

■    We conclude that a rational trier of fact could have found beyond a reasonable doubt that defendant aided and abetted Monk in the commission of the four counts of second-degree burglary relating to the construction-site incident. ORS 164.215(1) provides that "a person commits the crime of burglary in the second degree if the person enters or remains unlawfully in a building with intent to commit a crime therein." ORS 161.155 provides, in part:

> "A person is criminally liable for the conduct of another person constituting a crime if:
>
> "* * * * *
>
> "(2)   With the intent to promote or facilitate the commission of the crime the person:
>
> "* * * * *
>
> "(b)   Aids or abets or agrees or attempts to aid or abet such other person in planning or committing the crime[.]"

To support criminal liability on an aid and abet theory, the state was not required to prove that defendant actually entered the trailers, but it was required to show more than that he was merely present at the scene of the burglaries or that he provided assistance long after the crimes were completed. *See State v. McDonnell,* 98 Or App 134, 138, 778 P2d 547, *rev den,* 308 Or 660 (1989) (participation in cover-up did not make defendant accomplice to earlier committed crime); *State v. Jackson,* 64 Or App 667, 669 P2d 826 (1983) (mere presence at crime scene is insufficient to convict).

Here, the evidence—including Monk's testimony and corroborating evidence—was sufficient to create a jury issue as to defendant's guilt on an aid and abet theory. Monk testified, and defendant admitted to police, that defendant was present with Monk near the scene of the crimes on the day they were committed. Defendant admitted that he knew that Monk was breaking into the trailers while defendant was at that location, and he described exactly how the trailers were broken into. Defendant also admitted that he owned the vehicle used to transport the stolen items from the scene and that he helped sanitize the items for fencing. *See State v. Moriarty*, 87 Or App 465, 468 n 1, 742 P2d 704, *rev den*, 304 Or 547 (1987) ("Even though actions *after* the commission of a crime cannot alone constitute aiding or abetting, they may be used as evidence that earlier activities were aiding and abetting." (Emphasis in original; citations omitted.)); *see also Jackson*, 64 Or App at 669 (evidence placing defendant in escape car with stolen money was sufficient to hold him liable for robbery committed by passenger despite defendant's professed ignorance of offense). The trial court did not err in denying defendant's motion for a judgment of acquittal with respect to the burglary charges arising from the construction-site break-ins.

We turn to defendant's challenges to the sufficiency of the evidence to support his eight convictions relating to the "third trip" to the storage unit at which, according to Monk, he, defendant, and Goddard were present. As discussed, those convictions include one count of second-degree burglary (Count 30); one count of first-degree theft involving a stereo, collectable GI Joe dolls, tools, and other personal property worth more than $750 (Count 31); three counts of first-degree theft involving three different firearms (Counts 32, 33, and 34); and three counts of felon in possession of a firearm involving the same firearms (Counts 35, 36, and 37).

We begin with the three felon in possession of a firearm counts. The state concedes that the trial court erred in denying defendant's motion for a judgment of acquittal with respect to those counts, because there was no evidence that the weapons were "firearms" for purposes of the applicable statutes. That concession is well taken.

ORS 166.270(1) provides:

> "Any person who has been convicted of a felony under the law of this state or any other state, or who has been convicted of a felony under the laws of the Government of the United States, who owns or has in the person's possession or under the person's custody or control any firearm commits the crime of felon in possession of a firearm."

ORS 166.210(2) defines "firearm" for the purpose of ORS 166.270 as "a weapon, by whatever name known, which is designed to expel a projectile by the action of powder and which is readily capable of use as a weapon." The state adduced no evidence about the guns, beyond the facts that they were stolen and kept in the gun safe that was taken from the storage unit. There was no evidence of how many guns were taken, what types of guns they were, and whether they were operable or readily capable of use as a weapon. Accordingly, the trial court erred in denying defendant's motion for a judgment of acquittal with respect to Counts 35, 36, and 37.

■    For the same reason, the trial court erred in denying defendant's motion for a judgment of acquittal with respect to Counts 32, 33, and 34, for which defendant was convicted of first-degree theft of a firearm. ORS 164.055(2)(c), dealing with first-degree theft of a firearm, provides that, " '[f]irearm' means a weapon, by whatever name known, which is designed to expel a projectile by the action of black powder or smokeless powder and which is readily capable of use as a weapon." Thus, for defendant to be convicted of that offense, as with the felon in possession of a firearm counts, the state was required to prove that the stolen guns were readily capable of use as weapons. And, as discussed, it failed to adduce such proof.

■ ■    On appeal, defendant asserts that the trial court erred in denying his motion for a judgment of acquittal of the firearm theft counts on that ground but, unlike with respect to the felon in possession of a firearm counts, defendant did not identify to the trial court that defect in the state's proof with respect to the firearm theft counts. We nevertheless conclude that the court's submission of those counts to the jury was plain error. This court may exercise its discretion to

address an unpreserved error of law that is "apparent on the face of the record." ORAP 5.45(1). An error is plain if it is purely legal, obvious and not reasonably in dispute, and depends on irrefutable predicate facts, so that we are not required to go beyond the record or choose between competing inferences. *State v. Page*, 197 Or App 72, 78, 104 P3d 616 (2005), *rev den*, 340 Or 673 (2006). In deciding whether to exercise our discretion to address such an error, we consider "the gravity of the error[,] the ends of justice in the particular case[,] * * * and whether the policies behind the general rule requiring preservation of error have been served in the case in another way[.]" *Ailes v. Portland Meadows, Inc.*, 312 Or 376, 382 n 6, 823 P2d 956 (1991).

The trial court had the same issue before it in connection with defendant's motion for a judgment of acquittal respecting the felon in possession of a firearm counts. Although, unaccountably, defendant failed to make a corresponding argument with respect to the theft of a firearm counts, the issue was purely legal, it was obvious and not reasonably in dispute, and it depended on irrefutable predicate facts. There literally was no evidence that the guns were operable or readily capable of use as weapons. That defect was just as fatal with respect to the application of ORS 164.055(2)(c) as it was with respect to ORS 166.210(2). The relevant portions of the definitions in the two statutes are identical.

Nor, under the foregoing circumstances, is there any logical reason for declining to exercise our discretion to correct the error in the case of one set of convictions and not the other. Both sets of convictions are flawed for the same reason. We are compelled to remedy that flaw as to one set of convictions, and the state has asserted no interest in preserving plainly erroneous results with respect to the other convictions. Moreover, defendant had no tactical advantage to gain by asserting his objection with respect to one set of crimes but not the other. Accordingly, we also reverse defendant's convictions for first-degree theft of a firearm on Counts 32, 33, and 34.

We turn to defendant's challenges to his remaining two convictions, pertaining to the "third trip" to the storage

unit. Defendant argues that the evidence was insufficient in three respects: (1) there was no proof that he entered the unit; (2) with respect to the theft count, there was insufficient proof of the value of the items taken; and (3) Monk's testimony connecting him to the burglary was not adequately corroborated.

■ Again, the first argument fails, because the state theorized that defendant aided and abetted the commission of the burglary and theft. *See State v. Essig*, 31 Or App 639, 642-43, 571 P2d 170 (1977), *rev den*, 281 Or 323 (1978) (holding that, where multiple offenders act in concert, each offender is liable for the acts of co-offenders, even when it is unclear what acts were committed by which of them). And we readily reject the second argument, which pertains only to the theft count. Defendant asserts that the state failed to prove that the stolen items had a value of $750 or more. Suffice it to say that the owner's testimony as to the total value of the property taken in two break-ins, after subtracting both the value of items that the owner testified were stolen in the first break-in and the value of the guns taken in the second break-in, yields evidence that the value of the remaining items taken in the second break-in—which corresponds with the "third trip" incident—substantially exceeded $750.

■ We turn to the argument that Monk's testimony with respect to defendant's participation in the burglary at the storage unit was insufficiently corroborated. Defendant relies on *State v. Torres*, 207 Or App 355, 142 P3d 99 (2006). In that case, the defendant—who was an acquaintance of the same witness, Monk, who testified in this case—was charged with, among other things, second-degree burglary involving the entry into a building with the intent to commit the theft of two motorcycles. As in this case, the state's case was based primarily on Monk's testimony as an accomplice. We addressed the sufficiency of the posited corroborative evidence on the burglary count:

> "Monk testified that he took the two motorcycles out of the barn and that [Torres] transported them. Detective Stuart testified that Haight had told him that the motorcycles discovered on the Haights' property had been brought there by

[Torres]. According to [Torres], Haight's statement to the officer was insufficient to corroborate Monk's testimony.

"We agree. Nothing in Haight's statement provides even circumstantial evidence that [Torres] entered the barn from which the motorcycles were stolen *or that [Torres] somehow aided and abetted Monk in doing so.*"

*Torres*, 207 Or App at 363-64 (emphasis added). We hastened to add that the state did not allege, or argue on appeal, "that [Torres] was guilty of having committed the relevant burglary under an aid and abet theory." *Id.* at 364 n 2. Accordingly, the emphasized portion of *Torres* was *dictum*. Our primary focus—indeed, necessarily so—was on the absence of a logical connection between the proffered corroborative evidence and the state's theory that the defendant had personally entered the barn from which the stolen property was taken. Our conclusion in that regard was correct.

In this case, the difference in the state's burglary theory and the precise nature of the corroborative evidence requires a shift in our focus. Here, unlike in *Torres*, the state's theory was that defendant aided and abetted the burglary committed during the "third trip" to the storage unit, and the corroborative evidence showed that the same sort of items as those stolen during that break-in were found in defendant's residence. Even though Monk testified that GI Joe dolls were stolen in two of the "trips" (only one of which defendant was alleged to have participated in), that evidence, however slight, circumstantially tended to show that defendant participated in the burglary. *See, e.g., State v. Wederski*, 230 Or 57, 59, 368 P2d 393 (1962) (where "certain fruits of [a burglary] were found on the person of the defendant * * * the testimony of the accomplice was corroborated"); *State v. Brake*, 99 Or 310, 315, 195 P 583 (1921) ("Indeed, possession of the fruits of the crime has been held of itself sufficient corroboration of the accomplice to sustain a conviction, even in the case of homicide[.]"); *State v. Tilford*, 41 Or App 433, 437-38, 599 P2d 1144, *rev den*, 288 Or 1 (1979) (holding that the defendant's possession at his residence of the fruits of a burglary was sufficient corroborative evidence to "implicate[ ] defendant in the commission of the burglary"). Accordingly,

the trial court did not err in denying defendant's motion for a judgment of acquittal with respect to Count 30.

Finally, because we reverse several of defendant's convictions, the entire case will be remanded for resentencing. ORS 138.222(5)(a). Accordingly, we need not address defendant's assignments of error regarding his sentences.[3]

Convictions on Counts 32, 33, 34, 35, 36, and 37 reversed; remanded for resentencing as to remaining convictions; otherwise affirmed.

---

[3] We reject without discussion defendant's challenge to the sufficiency of the evidence to convict him of unauthorized use of a vehicle in Count 39.