Argued and submitted January 13, decision of Court of Appeals affirmed in part
and reversed in part; judgment of circuit court affirmed July 16, 2009

## STATE OF OREGON,
*Respondent on Review,*

*v.*

## NATAWUT VIRANOND,
*Petitioner on Review.*

(CCC040694CR; CA A127918; SC S056338, S057096)

212 P3d 1252

Jason E. Thompson, of Ferder Casebeer French & Thompson LLP, Salem, argued the cause and filed the brief for petitioner on review.

Inge D. Wells, Assistant Attorney General, Salem, argued the cause and filed the brief for respondent on review. With her on the brief were Hardy Myers, Attorney General, and Mary H. Williams, Solicitor General.

Before Gillette, Presiding Justice, and Durham, Balmer, Kistler, Walters, and Linder, Justices.**

GILLETTE, P. J.

---

** De Muniz, C. J., did not participate in the consideration or decision of this case.

**GILLETTE, P. J.**

The principal issue in this criminal case is whether the trial court erred in permitting a police officer, who had observed the testimony of several prosecution witnesses, to testify that the testimony of two witnesses at trial was "consistent" with the statements that those witnesses had given to police officers when they were interviewed before the trial. Defendant contends that such testimony constitutes an impermissible comment by one witness on the credibility of another, and that the Court of Appeals therefore erred in not reversing his conviction on that ground. *State v. Viranond*, 221 Or App 133, 188 P3d 404 (2008) (rejecting claims of error without discussion). For the reasons that follow, we reject that argument.[1] In a separate petition for review, the state argues that the Court of Appeals erred in reversing the trial court's imposition of consecutive sentences and in remanding the case to the trial court for resentencing. The state asks this court to reverse that part of the Court of Appeals decision that concerned sentencing and, instead, affirm the trial court's judgment. As we discuss below, we agree with the state that the Court of Appeals erred in reversing and remanding the case for resentencing.

Because defendant was convicted of the charged offenses, we view the facts in the light most favorable to the state. *State v. Johnson*, 345 Or 190, 192, 191 P3d 665 (2008). Defendant was the mastermind of a home invasion robbery that he and others perpetrated in retaliation for certain offenses that defendant believed (erroneously, it turned out) that the robbery victim's brother had committed against him and his friend. The robbery actually was carried out by two of the others, Weedmark and Henderson. A third person, Burgstahler, remained with defendant at a nearby location, where Weedmark and Henderson joined them after the robbery. All four made use of the money and drugs obtained in the robbery.

---

[1] Defendant also contends that the trial court violated his constitutional right to confront witnesses when it prevented him from presenting evidence of a witness's prior bad acts, and he raises an unpreserved objection to the trial court's decision not to permit him to present certain other evidence. We reject both those arguments without discussion.

Defendant was charged, on an aiding-and-abetting theory, with first-degree robbery, second-degree robbery, first-degree burglary, and unlawful use of a weapon.

Burgstahler and Henderson testified at defendant's trial and both identified defendant as the instigator of the robbery. Burgstahler acknowledged that she was a recovering methamphetamine addict and that she had several prior convictions for forgery, theft, identity theft, and possession of a controlled substance. Burgstahler testified about her role in the robbery and that, after the robbery, she persuaded Weedmark and Henderson to deny any knowledge about the robbery. Burgstahler denied that the prosecution had made any promises to her in exchange for her testimony, although she acknowledged that she had not been charged with any crimes related to the case.

Henderson, in his testimony, stated that he already had pleaded guilty to second-degree robbery, first-degree burglary, and unlawful use of a weapon. He explained that his guilty plea was the result of an agreement with the state that he would receive a 70-month sentence with good-time credit, rather than a 90-month sentence with no good-time credit, if he testified truthfully at defendant's trial. Henderson also acknowledged that he had prior felony theft and misdemeanor forgery convictions.

Defendant contended at trial that he had had nothing to do with the robbery and that Burgstahler and Henderson implicated him to deflect attention away from themselves and to curry favor with the prosecution in return for more lenient treatment. Defendant cross-examined both Burgstahler and Henderson extensively about the lenient treatment that each had received for their participation in the crimes, and suggested that they had fabricated their trial testimony to curry favor with the prosecution. Defendant's approach included revisiting at length Burgstahler's and Henderson's interviews with the police detectives investigating the case, in an apparent effort to point out how those witnesses' initial statements to the police differed in various respects from their trial testimony. Specifically with respect

to Henderson, defendant asked multiple questions to establish that Henderson did not mention defendant's participation in the robbery in the first two of his three police interviews.

Following the cross-examinations of Burgstahler and Henderson, the prosecutor called as a witness Detective Napieralski, an investigating officer who had been present for all the interviews with both Burgstahler and Henderson and who had been present in the courtroom throughout the trial up to that point. The prosecutor began to question Napieralski about the content of the earlier interviews with Henderson, at which point the following colloquy took place:

"[THE COURT]: Let me interrupt here. [Prosecutor], do you plan on going over Mr. Henderson's entire testimony through this witness?

"[PROSECUTOR]: No.

"[THE COURT]: Okay. All right."

The prosecutor then asked Napieralski several questions concerning what Henderson had said in the earlier interviews, at which point, the court interrupted again:

"[THE COURT]: Here we are going over his testimony again. For what purpose would you be offering this?

"[PROSECUTOR]: Your honor, these are offered as prior consistent statements which are admissible as substantive evidence.

"[THE COURT]: I am not going to let you go over his entire testimony again, [Prosecutor]. I think we just need, you know, to get on to new subjects or—

"[PROSECUTOR]: I understand that, judge, but Mr. Henderson was impeached—

"[THE COURT]: Well, Mr.—Detective Napieralski was here in the courtroom during Mr. Henderson's entire testimony. I mean, you might ask him was he consistent or inconsistent with—I mean, I just don't want to have this jury listen to Mr. Henderson's testimony all over again.

"[PROSECUTOR]: I would be happy to ask Detective Napieralski if he believed Mr. Henderson's testimony here to be consistent with the three interviews he's given, but I

suspect the defense would object to that. But I could cut it to that point if it—

"[THE COURT]: You know, I am just trying to move things along here, so we don't take up all afternoon—

"[PROSECUTOR]: Okay.

"[THE COURT]: —in Detective Napieralski's testimony, so—"

The prosecutor then continued questioning Napieralski as follows:

"Q. Detective Napieralski, you heard Mr. Henderson's testimony here today.

"A. I did.

"Q. We talked—did you hear all—you heard all of it?

"A. I did hear all of it.

"Q. You heard how he minimized [defendant's]—admitted minimizing [defendant's] involvement—

"A. That's correct. I heard that.

"Q. —his first interview? Is his testimony consistent with the three interviews he gave to you and other members of the Tigard Police Department?

"[DEFENSE COUNSEL]: Objection. Question calls for the witness to comment on the veracity or truthfulness—

"[THE COURT]: No it doesn't.

"[DEFENSE COUNSEL]: —of the witness?

"[THE COURT]: No, it doesn't. Just calls on whether it's consistent or not. Overruled."

The court directed Napieralski to answer the question, and Napieralski responded as follows:

"[THE WITNESS]: I felt that his statements that I've heard this afternoon were consistent with the interviews, all of the three of which that I was present with. He—you guys went through all the particulars of it and I felt that it was the same as when I talked to him."

The prosecutor then began a similar line of questioning addressing Burgstahler's testimony:

"Q.   And you also heard Ms. Burgstahler's testimony?

"A.   I did.

"Q.   And was that consistent with the version she gave you?

"[DEFENSE COUNSEL]:   Objection, for the same reasons. Not to re-argue, Your Honor.

"[THE COURT]:   Oh, it isn't. It's not for the veracity, it's just for her consistency. I'm going to allow him to ask that question and allow him to answer it.

"[THE WITNESS]:   Right off the top of my head, I can't think of anything that strikes me as—that surprised me."

A jury found defendant guilty on all counts and the court imposed sentences, including one consecutive sentence, totaling 126 months in prison. Defendant appealed his convictions and sentence to the Court of Appeals, assigning error to 15 rulings of the trial court, including, among other things, its rulings respecting Napieralski's testimony, described above, as well as to the court's imposition of the consecutive sentence based on its own findings of the facts necessary to support such a sentence. As noted, the Court of Appeals affirmed defendant's convictions without discussion, but reversed the trial court's imposition of the consecutive sentences. *Viranond*, 221 Or App 133.

In this court, defendant repeats his argument that the trial court erred in permitting Napieralski to testify that Henderson's and Burgstahler's trial testimony was "consistent" with the statements that those witnesses earlier had given the police. Defendant argues, first, that, in Oregon, it is beyond dispute that one witness may not comment directly on the credibility of another, *see State v. Middleton*, 294 Or 427, 438, 657 P2d 1215 (1983) (so holding), and that even indirect comments about the credibility of another witness are not permissible, *see State v. Milbradt*, 305 Or 621, 630, 756 P2d 620 (1988) (an expert's opinion that a witness is not deceptive, could not lie without getting tripped up, and would not betray a friend is tantamount to expressing the opinion

that the witness is telling the truth, and is not permissible). Defendant then asserts that Napieralski's statement that Burgstahler's and Henderson's trial testimony was consistent with their earlier statements to the police was an indirect comment on their credibility, which the trial court should not have permitted.

Defendant next addresses the state's rationale for offering Napieralski's statement, *viz.*, that it was admissible under OEC 801, which provides, in part:

"(4)   A statement is not hearsay if:

"(a)   The declarant testifies at the trial or hearing and is subject to cross-examination concerning the statement, and the statement is:

"* * * * *

"(B)   Consistent with the testimony of the witness and is offered to rebut an inconsistent statement or an express or implied charge against the witness of recent fabrication or improper influence or motive."

Defendant argues that, under that rule, a witness's *prior consistent statements* are admissible, but another witness's *opinion* that the prior statements are consistent is not. Defendant argues that the determination whether the statements actually are consistent is a factual matter for the jury to decide.

■■   As a starting point, we agree that, under this court's case law, including *Middleton* and *Milbradt*, one witness may not comment directly on the credibility of another or make a statement that is "tantamount" to stating that another witness is truthful. In this case, however, Napieralski did not directly testify that he believed that either Henderson or Burgstahler had testified truthfully. Rather, the question here is whether, in context, Napieralski's testimony that Henderson's and Burgstahler's trial testimony was consistent with what each had told police in pretrial interviews was tantamount to testimony that those witnesses were credible. We have no trouble concluding that it was not.

In his cross-examination, defendant attempted to establish that Henderson and Burgstahler had fabricated their trial testimony—that is, that they told detectives one

story before trial and testified at trial to another. In Henderson's case, for example, defendant showed in cross-examination that Henderson did not mention defendant's involvement in the robbery until his third police interview, yet was unwavering at trial in his certainty that defendant was involved from the beginning. In Burgstahler's case, defendant tried to establish that certain details that she told the jury about what happened on the day of the robbery were different from details that she had included in her police statement. Because defendant impeached the witnesses' trial testimony by implying that they were lying at trial when they implicated defendant, the state was permitted, under the specific wording of OEC 801(4)(a)(B), to rebut that implication with the witnesses' prior consistent statements. Defendant does not contend otherwise.

The prosecutor then attempted to introduce Henderson's and Burgstahler's prior consistent statements by having Napieralski recount the details of what each person had told him and other officers during the pretrial interviews. The trial court cut the state short. In that context, it is apparent that Napieralski's testimony that the witnesses' pretrial statements to police were consistent with their trial testimony was merely a shorthand summary of the pretrial statements; it was not a comment on either Burgstalher's or Henderson's credibility. As the trial court observed, the primary purpose of Napieralski's testimony was not to bolster or establish the witnesses' veracity; a story told consistently can be false in all its iterations. Instead, the narrow purpose of the testimony was to show that, true or false, the witnesses initially provided the police with the same information that they later testified to at trial.

As noted, OEC 801(4)(a)(B) plainly permits either party to offer prior consistent statements to rebut a charge of recent fabrication. Under that rule, defendant may well have been entitled to insist that Napieralski go through the earlier interviews in detail. That is, defendant could have objected to Napieralski's summarizing of Burgastahler's and Henderson's statements to police in pretrial interviews by testifying, in conclusory fashion, that those statements were "consistent" with the witnesses' trial testimony, on the ground that only the consistent statements themselves, and

not a subjectively worded summary of them, was admissible. Had he done so, such an objection might have been well taken. Defendant, however, did not object on that ground, and the issue that such an objection would have raised is not before us.[2]

Instead, defendant contended (and continues to contend) that testimony commenting that certain statements were consistent with one another serves no real purpose other than indirectly to bolster the credibility of the witness who made those statements. We disagree. As noted, a witness may repeat the same lie multiple times. We think that, in the context of the specific objection that counsel was making, testimony that the witnesses' earlier statements were consistent with their trial testimony merely established that the witnesses told the same story, true or false, more than once. In support of his contrary position, defendant relies on a Washington Court of Appeals case, *State v. Stevens*, 127 Wash App 269, 275-76, 110 P3d 1179 (2005), in which that court concluded that characterizing the statements that two victims separately made to police as "consistent" with each other "would suggest that the victims were truthful and accurate." As we have explained, we do not share that view, at least as to the facts presented here: consistency has no necessary connection with veracity. We find the Washington case unhelpful.

Of course, we do not deny that the prosecutor's hope in offering Napieralski's testimony was that it would turn out to rehabilitate Henderson's and Burgstahler's credibility. That was what the testimony was supposed to do. However, that fact does not make Napeiralski's testimony inadmissible. *See Middleton*, 294 Or at 435 ("Much expert testimony will tend to show that another witness either is or is not telling the truth. * * * This, by itself, will not render evidence inadmissible."). Moreover, the express purpose of OEC 801(4)(a)(B) is to rehabilitate a witness's credibility after an express or implied charge of recent fabrication or improper

---

[2] To the extent that defendant can be understood to be making that argument now in this court, it is not preserved. *See State v. Lotches*, 331 Or 455, 492-93, 17 P3d 1045 (2000) (an objection to the admission of evidence on one ground does not preserve an objection on other grounds).

influence or motive. That purpose cannot be achieved without *some* review of witness's previous statements, either in painstaking detail or in more cursory form. The trial judge did nothing more than enforce the rule of evidence according to its own terms. That was not error.[3]

We conclude that the trial court did not err in rejecting defendant's argument that Napieralski's testimony that Henderson's and Burgstahler's pretrial statements to police were consistent with their trial testimony amounted to impermissible comments on the veracity of those witnesses, and the Court of Appeals did not err in affirming the trial court's rulings in that regard.

■ That conclusion does not end our consideration of this case, however. As noted, the state also sought review in this court of that part of the Court of Appeals decision that remanded the case to the trial court for resentencing. At sentencing, the trial court ordered that the sentence on one of defendant's first-degree burglary convictions be served consecutively to the sentences imposed on the robbery convictions, based on the trial court's own findings that the aggravating factors necessary to support the imposition of that sentence were present. The court imposed that sentence over defendant's objection that the imposition of a consecutive sentence requires factfinding by a jury.

On appeal, defendant repeated his argument that the trial court erred in imposing a consecutive sentence based on judicial factfinding. After defendant submitted his appellate brief in the case, this court decided *State v. Ice*, 343 Or 248, 170 P3d 1049 (2007), holding that, under the Sixth Amendment to the United States Constitution, an Oregon trial court could not, under the relevant statutory scheme, impose a consecutive sentence without a jury having found the facts necessary to support that consecutive sentence. *Id.* at 267. Based on this court's decision in *Ice*, the Court of

---

[3] Of course, the trial court's insistence that the prosecutor curtail his direct examination of Napieralski did not *ipso facto* prevent *defendant* from cross-examining the officer in far greater detail. However, there are legitimate reasons why defendant might have chosen not to do that, including a concern that Napieralski's detailed testimony might rehabilitate the witnesses far more effectively and completely than did his more summary characterization of the witnesses' testimony as "consistent."

Appeals held that the trial court erred in this case and remanded for resentencing. *Viranond*, 221 Or App at 134.

Meanwhile, the United States Supreme Court granted the state's petition for certiorari in *Ice*, and, on January 14, 2009, that Court issued its opinion reversing this court's decision in *Ice*. *See Oregon v. Ice*, 555 US ___ , 129 S Ct 711, 172 L Ed 2d 517 (2009) (so holding). This court then issued a brief, per curiam opinion that modified the original *Ice* opinion with respect to the Sixth Amendment question. The court held that a trial court does not violate a defendant's Sixth Amendment rights when it imposes a consecutive sentence based on the trial judge's factfinding. *State v. Ice*, 346 Or 95, 97, 204 P3d 1290 (2009). It follows from that holding that the Court of Appeals, through no fault of its own, erred in reversing the trial court's imposition of a consecutive sentence and remanding the case to the trial court for resentencing.

The decision of the Court of Appeals is affirmed in part and reversed in part. The judgment of the circuit court is affirmed.