Submitted December 16, 2010, affirmed March 2, petition for review denied July 28, 2011 (350 Or 571)

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

IRINA ANATOLEY BARANOVICH,
*Defendant-Appellant.*

Clackamas County Circuit Court
CR0900068; A142051

249 P3d 1284

Peter Gartlan, Chief Defender, and Joshua B. Crowther, Senior Deputy Public Defender, Office of Public Defense Services, filed the brief for appellant.

John R. Kroger, Attorney General, Jerome Lidz, Solicitor General, and Katherine H. Waldo, Senior Assistant Attorney General, filed the brief for respondent.

Before Schuman, Presiding Judge, and Wollheim, Judge, and Rosenblum, Judge.

WOLLHEIM, J.

## WOLLHEIM, J.

Defendant was convicted of second-degree assault for participating in an ambush in which her brother struck the victim in the head with a rock. ORS 163.175. On appeal, defendant argues that the evidence was insufficient to demonstrate that she knew that her brother would use a rock—as opposed to his fist—to assault the victim, and that she therefore should have been acquitted of aiding and abetting the "physical injury to another by means of a deadly or dangerous weapon." ORS 163.175(1)(b). We affirm.

Because the trial court found defendant guilty of the relevant offense, we state the facts in the light most favorable to the state. *State v. Viranond*, 346 Or 451, 453, 212 P3d 1252 (2009). Defendant and the victim were friends. They briefly lived together and also worked together. The friendship fell apart in December 2008, and the victim moved out. The victim also informed their employer about some of defendant's activities, and defendant was fired as a result. After defendant was fired, she made threats through mutual acquaintances about what she would do to the victim, including a text message stating, "when I see her she's dead." The victim also learned through friends that defendant was "looking for [her]."

In January 2009, the victim and her friends were "hanging out" in downtown Portland when she saw defendant in a car that she recognized as belonging to defendant's boyfriend, Mashtalyar. The victim became concerned, called for her ride, and headed back to her residence in Oregon City.

When the victim reached her residence and began walking up the steps to the front door, she saw someone "running out of the bushes." That individual, later identified as defendant's 13-year-old brother, struck the victim twice in the head with a rock, knocking her to the grass. Defendant, who had been hiding in the bushes, then jumped out. She and her brother then ran to Mashtalyar's car, which was parked down the block, and they fled the scene.

The victim and her friends reported the crime and described the getaway car. A short time later, police pulled over Mashtalyar's car. He was driving, defendant was in the

passenger seat, and defendant's brother was in the backseat. Mashtalyar told the investigating officer that they had driven to Oregon City to beat up the victim, that the plan was to punch and "knock [the victim] out," and that "all three had planned it"; he denied knowing anything about the rock that was used during the assault. As it turned out, Mashtalyar had been driving with a suspended license, and his car was towed and inventoried. During the inventory, police found "a baseball sized rock that had blood on it" under the driver's seat. In the backseat, police found a canister of pepper spray, a black ski mask, and an aluminum baseball bat.

Defendant and Mashtalyar, her codefendant, were each subsequently charged with two counts of assault. Count 1, second-degree assault, alleged that the defendants "did unlawfully and knowingly cause physical injury to [the victim] by means of a dangerous weapon, to-wit: a rock." Count 2, third-degree assault, alleged that the defendants "did unlawfully and knowingly, while being aided by another person actually present, cause physical injury to [the victim]." After a bench trial, defendant was found guilty of second-degree assault on a theory of accomplice liability; she was acquitted of third-degree assault.

Defendant now appeals, arguing that the trial court erred in convicting her of second-degree assault because the evidence established, at most, that she was an accomplice to fourth-degree assault. Her contention is that, under the accomplice liability statute, ORS 161.155, a defendant cannot be held liable for aiding or abetting second-degree assault unless the defendant intends to aid or abet that particular crime, as opposed to an assault generally. Here, she argues, the evidence established that she agreed to aid her brother in "beating up" the victim—a fourth-degree assault—but that there was no evidence that she was aware or intended that her brother would use a rock (which she concedes is a dangerous weapon) as part of that assault. According to defendant, despite that lack of evidence, the trial court nonetheless erroneously relied on *dictum* in *State v. Fichter*, 226 Or 526, 532, 360 P2d 278 (1961), to find her guilty on the theory that second-degree assault by means of a rock was a "natural and probable consequence" of the plan to physically assault the victim. *Cf. State v. Lopez-Minjarez*, 236 Or App 270, 286, 237

P3d 223, *disposition modified on recons*, 237 Or App 688, 240 P3d 753 (2010) ("We conclude that the 'natural and probable consequences' instruction is not an accurate statement of the law[.]").[1]

The state's response is two-fold. First, the state argues that defendant did not adequately preserve for appeal her contentions regarding the sufficiency of the evidence because she did not move for a judgment of acquittal, nor did she argue below regarding the continued viability of *Fichter*'s "natural and probable consequences" formulation. Second, the state argues that, contrary to defendant's characterization of the evidence, a reasonable trier of fact could have found that defendant indeed intended to aid or abet a second-degree assault.

■ As an initial matter, we conclude that the issue defendant raises on appeal regarding the sufficiency of the evidence was adequately preserved below. Although defendant did not move for a judgment of acquittal, she clearly challenged the sufficiency of the evidence during closing argument. *See State v. McCants/Walker*, 231 Or App 570, 576, 220 P3d 436 (2009), *rev'd on other grounds sub nom State v. Baker-Krofft*, 348 Or 655, 239 P3d 226 (2010) ("As noted, here, neither defendant challenged the legal sufficiency of the state's proof by way of a motion for judgment of acquittal. Nevertheless, in a bench trial, a defendant may also preserve a challenge to the legal sufficiency of the evidence by clearly raising the issue in closing argument."). During closing arguments, counsel for her codefendant specifically argued that, under the accomplice liability statute, the state must prove that the defendants intended to aid and abet an assault with a dangerous weapon rather than a "simple Assault IV of punching." He explained:

> "Natural and probable consequences don't apply to a situation where on [his] own [defendant's brother] finds a weapon of some kind as he's heading to the scene of the incident and then changes the whole intent of what's going to go on, which is you're going to do an armed assault, that's

---

[1] Although defendant suggests that the trial court applied the incorrect law to the facts, *cf. Lopez-Minjarez*, 236 Or App at 286, her assignment of error pertains only to the sufficiency of the evidence.

not a natural and probable consequence of the plan that these people had or the intent that they had in the car, which was to punch her."

Codefendant's counsel continued:

"And, again—you know, what evidence is there that there was any planning to commit an Assault II in the car, there wasn't any. What did [defendant] think when she was leaving the car and what was going to happen at this place, was she aiding an Assault II or not.

"When did [defendant's brother] arm himself with a rock, did [defendant] know that he had picked up a rock, did she pick it up and give it to him, what discussions were there, we don't have any evidence of that.

"Did—you know, so if she aided—how did she aid an Assault II so a lot of the same questions as Mr. Mashtalyar."

Defendant's counsel then offered her closing argument, asking the court to "adopt on behalf of my client [codefendant's counsel's] arguments he and I discussed [*sic*] the various cases that we found." Later, defendant's counsel "stress[ed] [codefendant's counsel's] argument about the natural causes or the natural effects," arguing that there was no evidence that defendant knew that an assault with a rock would be a consequence of her actions. Furthermore, from the trial court's remarks following closing arguments, it is apparent that the court understood defendant and her codefendant to be arguing that the evidence was insufficient to demonstrate that they intended to aid or abet a crime more serious than fourth-degree assault.

We turn, then, to the merits of defendant's assignment of error. Her argument has two components: First, she argues that she can be convicted of second-degree assault on an accomplice liability theory only if she intended to aid or abet an assault of that seriousness—*i.e.*, an assault with a dangerous weapon. Second, she argues that the evidence in the record is insufficient to establish that she intended anything more than to aid her brother's punching of the victim in the head with his fist. Whatever the merits of defendant's understanding of accomplice liability, her factual premise is

incorrect. On this record, a reasonable trier of fact could infer that defendant intended more than a "simple" assault.

Defendant is correct that there is no direct testimony that she knew her brother was armed with a rock. There is ample circumstantial evidence, however, from which a trier of fact could infer that defendant intended her brother to inflict injury on the victim by means of a dangerous weapon. A trier of fact would not be required to infer, as defendant suggests, that her brother picked up the rock somewhere outside of defendant's presence. It would be perfectly reasonable to infer that her brother had the rock with him when they left the car together or picked it up as the two were approaching the victim's residence together, and that defendant knew exactly what her brother intended to do with it. Defendant had previously threatened, "[W]hen I see [the victim] she's dead." The plan was to "knock [the victim] out"; in the back-seat of the getaway car, there was a ski mask (used during the assault), a baseball bat, and a canister of mace—items that, under the circumstances, give rise to an inference that the plan was to do more than simply punch the victim; and defendant was dropped off with her brother and was hiding nearby in the bushes when her brother, carrying a "large object" in his hand, ran toward the victim and assaulted her. That evidence was sufficient for a trier of fact to find beyond a reasonable doubt that defendant intended to aid or abet an assault with a dangerous weapon, and defendant was not entitled to a judgment of acquittal on the charge of second-degree assault.

Affirmed.