Submitted November 27, 2012, affirmed July 3, petition for review denied
October 3, 2013 (354 Or 342)

## STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

## EUGENE JAMES MAY,
*Defendant-Appellant.*

Polk County Circuit Court
10P3205; A147242

306 P3d 759

Peter Gartlan, Chief Defender, and Marc D. Brown, Deputy Public Defender, Office of Public Defense Services, filed the brief for appellant.

John R. Kroger, Attorney General, Anna M. Joyce, Solicitor General, and Timothy A. Sylwester, Assistant Attorney General, filed the brief for respondent.

Before Ortega, Presiding Judge, and Haselton, Chief Judge, and Sercombe, Judge.

SERCOMBE, J.

## SERCOMBE, J.

Following a bench trial, defendant was convicted of burglary in the first degree, ORS 164.225, theft in the first degree, ORS 164.055, and two counts of criminal mischief in the second degree, ORS 164.354. Those charges stemmed from a burglary of a storage facility during which items were stolen and the facility was damaged. On appeal, defendant argues that the state presented insufficient evidence to show that he was present "at the scene of the burglary" and that the trial court therefore erred in convicting him of the burglary and criminal mischief charges. We conclude that the evidence was sufficient to support the convictions and, accordingly, affirm.

Because defendant's assignments of error challenge the sufficiency of the state's evidence to support his convictions, we state the facts in the light most favorable to the state. *State v. Boone*, 213 Or App 242, 244, 160 P3d 994, *adh'd to as modified on recons*, 215 Or App 428, 169 P3d 1274 (2007). On the morning of March 23, 2010, the owner of a Falls City storage facility reported to the Polk County Sheriff's Office that the facility had been burglarized during the night. Specifically, a locked gate in the fence surrounding the property had been cut with bolt cutters and left ajar, padlocks securing eight mini-storage units had also been cut (and one unit door was damaged), and one unit had been entered and searched. The owner then notified the tenant of that unit, Morgan, who confirmed that a substantial amount of his property was missing.

At approximately 1:00 p.m. that same day, in connection with an unrelated incident, McMinnville police searched a backpack found in the trunk of defendant's car and discovered items that were later determined to have been stolen from Morgan's storage unit. That evening, a Polk County sheriff's deputy searched defendant's residence in Grand Ronde pursuant to a warrant on an unrelated case and found property that "didn't fit," including "female jewelry, crosses, [and] diamond rings."

Defendant later told two deputies that some of the jewelry found in his residence had come from the burglary

of the storage facility in Falls City. Defendant maintained, however, that he was not present at the scene of the burglary. Instead, according to defendant, he and a friend, Ridenhour, agreed that Ridenhour would commit the burglary and that defendant would then store the stolen property for Ridenhour in exchange for some of it. However, when police asked defendant where he was on the night of the burglary, defendant gave conflicting statements regarding an alibi. Defendant was subsequently charged with eight counts of first-degree burglary, one count of first-degree theft, one count of second-degree theft, and two counts of second-degree criminal mischief.

At trial, Morgan testified regarding the amount of property that had been stolen from his storage unit:

"[MORGAN]: [The owner] came by that morning and told me that I needed to get over to the storage unit, it appeared somebody had broken into them and he wanted me to look in my unit and see if anything was missing. And as soon as I opened my unit up, it had all been stacked, boxed up[;] *** it had been literally moved from one side of my unit to the other side of my unit. I'm talking five or six hours in this unit. There's no way *** that people could have just gone in there, looked through a few things and left. This was a—they went through everything.

"[PROSECUTOR]: So, a lot of boxes, a lot of things in there?

"[MORGAN]: A lot of boxes, a lot of—so much stuff that there—yeah, they needed a truck. Forgive me. They needed a truck, sir. Because they took [a radio-controlled] car from my daughter this big, you're not going to carry that out with everything else they took out of there."

Additionally, Morgan testified that he was the owner of some of the property found in defendant's possession on March 23.

During closing arguments, the state argued that "it comes down to *** whether you believe that [defendant] was simply holding on to this property or [that] he had a part in the burglary." The state argued that the evidence—specifically, the temporal proximity between the burglary and defendant's possession of the property, Morgan's testimony about the amount of property missing, and defendant's

conflicting statements as to his whereabouts on the night of the burglary—supported its theory that defendant personally participated in the burglary and, in doing so, damaged the facility. Defendant responded that the state had presented insufficient evidence to show that he was present at the storage facility: "There's not a witness, no fingerprints, nothing independent to put [defendant] at the scene of these burglaries." Defendant argued that, without such a showing, the trial court could not find him guilty of burglary or criminal mischief.

As noted, the trial court found defendant guilty of first-degree burglary, first-degree theft, and two counts of second-degree criminal mischief. As to the burglary and criminal mischief counts, the court concluded that evidence that defendant was "in possession of recently stolen property * * * found in two different places" permitted an inference that defendant personally committed the burglary and damaged the facility.

Defendant appeals, reiterating his argument before the trial court. *See State v. Baranovich*, 241 Or App 280, 284, 249 P3d 1284, *rev den*, 350 Or 571 (2011) (in a bench trial, a defendant preserves a challenge to the sufficiency of the evidence by raising the issue during closing argument). As to the burglary charge, defendant argues that "[t]he record is devoid of direct evidence that defendant was at the storage facility at the time the burglary occurred" and that "mere possession of stolen goods many hours after a burglary is not circumstantial evidence that a person entered the location of the burglary with the intent to commit a crime therein."[1] As to the criminal mischief charges, defendant similarly argues that, "[b]ecause the state failed to present evidence, direct or circumstantial, that defendant was present at the storage facility, the record contains insufficient evidence that defendant caused the damage to the gate and storage unit."[2] Defendant does not dispute that the state presented

---

[1] As relevant here, ORS 164.225(1)(a) provides that a person commits the crime of first-degree burglary if the person violates ORS 164.215 while armed with a burglary tool or theft device. ORS 164.215(1) provides that a person commits the crime of second-degree burglary "if the person enters or remains unlawfully in a building with intent to commit a crime therein."

[2] As relevant here, ORS 164.354(1)(b) provides that a person commits the crime of second-degree criminal mischief if, "[h]aving no right to do so nor reasonable ground to believe that the person has such right, the person intentionally damages

sufficient evidence to show that *someone* committed those crimes; rather, he contends that the evidence is not sufficient to show that *he* was the person who did so.

The state responds that defendant "was found in personal possession of a substantial portion of the stolen property only hours after the burglary was committed. That possession and his location were entirely consistent with the inference that he committed the burglary, and the alibi that he provided to the officers proved to be false, by his own admission." Accordingly, in the state's view, the trial court did not err in concluding that the circumstantial evidence was sufficient to support the convictions.[3]

We review the trial court's rulings to determine whether, viewing the evidence in the light most favorable to the state, a rational trier of fact could have found that the state proved all of the essential elements of the offenses beyond a reasonable doubt. *State v. Cunningham,* 320 Or 47, 63, 880 P2d 431 (1994), *cert den,* 514 US 1005 (1995). As we have repeatedly noted, the following principles are especially relevant in assessing the sufficiency of the evidence:

> "In establishing an element, the state may rely on circumstantial evidence and reasonable inferences flowing from that evidence. An inferred fact must be one that the jury is convinced follows beyond a reasonable doubt from the underlying facts. But the requirement that the jury be convinced beyond a reasonable doubt does not mean that a particular inference must inevitably follow from the established facts. Rather, the established facts may support multiple reasonable inferences, and if they do, which inference to draw is for the jury to decide.
>
> "Whether particular circumstantial evidence is sufficient to support a particular inference, however, is a legal question for a court to decide. There is a difference between inferences that may be drawn from circumstantial evidence and mere speculation. Reasonable inferences are

---

property of another, or, the person recklessly damages property of another in an amount exceeding $500.00."

[3] The state alternatively argues that the evidence was sufficient to allow the trial court to conclude that defendant aided and abetted Ridenhour in committing the burglary and damaging the facility by agreeing before the burglary to store the stolen property. Given our disposition of the case, we do not address that argument.

permissible; speculation and guesswork are not. As we have observed before, the line between permissible inferences and impermissible speculation is sometimes faint. The line is also sometimes difficult to articulate with precision. But we agree with the federal courts, which frequently describe it in these terms:

> "'The line between a reasonable inference that may permissibly be drawn by a jury from basic facts in evidence and an impermissible speculation is not drawn by judicial idiosyncrasies. The line is drawn by the laws of logic. If there is an experience of logical probability that an ultimate fact will follow a stated narrative or historical fact, then the jury is given the opportunity to draw a conclusion because there is a reasonable probability that the conclusion flows from the proven facts * * *.'

> "*Tose v. First Pennsylvania Bank, N.A.*, 648 F2d 879, 895 (3d Cir), *cert den*, 454 US 893 (1981)."

*State v. McAtee*, 245 Or App 233, 236-37, 261 P3d 1284 (2011) (brackets, some citations, and some internal quotation marks omitted; ellipsis in *McAtee*).

Here, the state presented evidence that, within hours of the burglary, defendant possessed—in his car and residence—jewelry, a day planner, a backpack, and other personal effects that had been stolen from Morgan's storage unit at the storage facility. Additionally, Morgan testified that a large amount of property was stolen from his storage unit, suggesting that the crime was committed by more than one person. Finally, the state presented evidence that defendant told police that he knew about a burglary at a storage facility in Falls City and gave police inconsistent statements regarding his whereabouts on the night of that burglary.[4] Given those circumstances, we conclude that there was a reasonable probability that defendant was present at the storage facility. Accordingly, the evidence was legally sufficient

---

[4] Of course, as noted, defendant admitted to knowing of the burglary in the context of implicating Ridenhour and stating that defendant had only agreed to store the property after it was stolen. The court, however, was not required to accept as true defendant's exculpatory statements. *See Cunningham*, 320 Or at 63-64 (factfinder is not required to accept an "alternative, less incriminating, version of what happened").

to permit the court to infer that defendant personally burglarized and damaged that facility.

Affirmed.