No. 1057          December 10, 2025          531

IN THE COURT OF APPEALS OF THE
STATE OF OREGON

In the Matter of C. J. W.,
a Youth.

STATE OF OREGON,
*Respondent,*

*v.*

C. J. W.,
*Appellant.*

Clackamas County Circuit Court
22JU05937; A183327

Colleen F. Gilmartin, Judge.

Argued and submitted October 15, 2025.

Christa Obold Eshleman argued the cause for appellant. Also on the briefs was Youth, Rights & Justice.

Jeff J. Payne, Assistant Attorney General, argued the cause for respondent. Also on the brief were Dan Rayfield, Attorney General, and Benjamin Gutman, Solicitor General.

Before Shorr, Presiding Judge, Powers, Judge, and O'Connor, Judge.

O'CONNOR, J.

Affirmed.

**O'CONNOR, J.**

Youth appeals from a delinquency judgment committing him to the legal custody of the Oregon Youth Authority (OYA) for placement on probation. When youth was 15 years old, he drove a car around 100 miles per hour and caused a crash that killed his friend, who was a passenger in the car. Youth was adjudicated for acts that would constitute negligent homicide, ORS 163.145, and fourth-degree assault, ORS 163.160, if he had been an adult.

Youth raises two assignments of error. In his first assignment of error, youth argues that the juvenile court's written findings placing him in OYA custody under ORS 419C.478(1)[1] were not supported by evidence in the record. In his second assignment, youth argues that the juvenile court erred when it ruled that it was in youth's best interests to remove him from his parents and commit him to the custody of OYA. We conclude that the juvenile court properly understood and applied the dispositional considerations mandated in ORS 419C.411(3) and the best-interests determination in ORS 419C.478(1) and that it acted within its discretion when it concluded that committing youth to OYA's custody was in youth's best interests. Additionally, we conclude that the juvenile court's written findings were supported by evidence in the record. Accordingly, we affirm.

## I.   BACKGROUND

A juvenile court must consider the following "in determining the disposition of the case":

"(a)   The gravity of the loss, damage or injury caused or attempted during, or as part of, the conduct that is the basis for jurisdiction under ORS 419C.005;

---

[1] ORS 419C.478(1) provides:

"The court may, in addition to probation or any other dispositional order, place an adjudicated youth who is at least 12 years of age in the legal custody of the Oregon Youth Authority for care, placement and supervision or, when authorized under subsection (3) of this section, place an adjudicated youth in the legal custody of the Department of Human Services for care, placement and supervision. In any order issued under this section, the court shall include written findings describing why it is in the best interests of the adjudicated youth to be placed with the youth authority or the department."

"(b) Whether the manner in which the adjudicated youth engaged in the conduct was aggressive, violent, premeditated or willful;

"(c) Whether the adjudicated youth was held in detention under ORS 419C.145 and, if so, the reasons for the detention;

"(d) The immediate and future protection required by the victim, the victim's family and the community; and

"(e) The adjudicated youth's juvenile court record and response to the requirements and conditions imposed by previous juvenile court orders."

ORS 419C.411(3).

Additionally, the legislature codified additional factors that the juvenile court may consider in determining the disposition of the case:

"(a) Whether the adjudicated youth has made any efforts toward reform or rehabilitation or making restitution;

"(b) The adjudicated youth's educational status and school attendance record;

"(c) The adjudicated youth's past and present employment;

"(d) The disposition proposed by the adjudicated youth;

"(e) The recommendations of the district attorney and the juvenile court counselor and the statements of the victim and the victim's family;

"(f) The adjudicated youth's mental, emotional and physical health and the results of the mental health or substance abuse treatment; and

"(g) Any other relevant factors or circumstances raised by the parties."

ORS 419C.411(4).

A juvenile court may "in addition to probation or any other dispositional order, place an adjudicated youth who is at least 12 years of age in the legal custody" of OYA. ORS 419C.478(1). In an order committing a youth to OYA custody, the juvenile court must "include written findings

describing why it is in the best interests of the adjudicated youth to be placed with" OYA. *Id*. A juvenile court's best-interest determination for commitment to OYA custody involves consideration of "some subset of the factors" in ORS 419C.411(3) and (4) "that drive the disposition generally, as there is a single disposition." *State v. T. J. L.*, 337 Or App 600, 603, 564 P3d 503 (2025). *See also State v. N. K. H.*, 341 Or App 78, 81-82, 572 P3d 349 (2025) (citing *T. J. L.*, 337 Or App at 603 before concluding that "the court's findings indicate[d] that it appropriately considered youth's past conduct with respect to those factors as context for its best-interest determination").

In this case, at the end of the dispositional hearing, the juvenile court made thorough findings that demonstrate that it understood its authority under ORS 419C.411(3) and (4) and ORS 419C.478(1).

The juvenile court discussed the factors that it must consider under ORS 419C.411(3) when making a dispositional decision, and it made case-specific findings on each factor. The juvenile court next discussed the factors it may consider under ORS 419C.411(4). The court again made case-specific findings on each factor. The court then explained why it concluded that OYA custody was in youth's best interest and that an OYA correctional setting was not necessary because "that could be more harmful to [youth] and would not achieve the—the statutory goals of accountability reformation in the nature of community safety."

In its written judgment, the juvenile court made written findings describing why placement of youth in OYA custody was in the best interests of youth as required under ORS 419C.478(1). The written findings provide that

"it is in the best interest of the adjudicated youth to be placed into the legal custody of the [OYA] for the reason that the youth requires more significant structure and supervision than can be provided to meet the adjudicated youth's needs based on the adjudicated youth's past repeated school sanctions/referrals and illegal behaviors not responding to or resulting in a change of behavior.

"The court finds [that] the prior structure and supervision prior to this adjudication was insufficient to meet the

needs of the child, to address underlying diagnoses, be held accountable, improve decision making focused on empathy, changing behavior and moving forward in a remorseful and focused manner. The court further finds [that] the youth repeatedly engaged in the behavior that has caused the death of [BC] and this case to be brought over a course of years. Being placed in the [OYA's] custody is necessary to develop a probation that sufficiently addresses the youth's adjudication, history of behavior, and future, necessary for the youth to be safe in the community, [and] make safe decisions[.]"

## II. ANALYSIS

### A. *Disposition Determination*

We first discuss youth's second assignment of error that the juvenile court erred when it ruled that it was in youth's best interests to remove him from his parents and commit him to the custody of the OYA.

Youth requests that we review this case *de novo*. We decline to exercise *de novo* review. "We review the juvenile court's dispositional decision regarding placement of a delinquent youth for abuse of discretion. We will reverse a discretionary ruling only if it falls outside the range of legally permissible options, keeping in mind that there is often more than one legally permissible choice when discretion is at play." *State v. T. J. L.*, 335 Or App 477, 483, 558 P3d 855 (2024), *adh'd to as modified on recons*, 337 Or App 600, 564 P3d 503 (2025) (citations omitted). This court reviews the juvenile court's findings of historical fact for any evidence to support them. *State v. G. L. D.*, 253 Or App 416, 418, 290 P3d 852 (2012), *rev den*, 354 Or 597 (2013).

After oral argument and with our leave, youth filed a supplemental brief arguing that we should overrule *T. J. L.* and review ORS 419C.478 best-interests determinations for legal error, rather than abuse of discretion. We are not persuaded that *T. J. L.* is wrong, let alone "plainly wrong." *See State v. Woods*, 317 Or App 506, 513, 505 P3d 432, *rev den*, 370 Or 198 (2022) (describing "plainly wrong" standard).

Discretion refers to a trial court's authority to choose between several permissible options. *State v. Romero*,

236 Or App 640, 643, 237 P3d 894 (2010). "If the trial court's decision was within the range of legally correct discretionary choices and produced a permissible, legally correct outcome, then the trial court did not abuse its discretion." *State v. Rogers*, 330 Or 282, 312, 4 P3d 1261 (2000). But if "a trial court's purported exercise of discretion flows from a mistaken legal premise, its decision does not fall within the range of legally correct choices and does not produce a permissible, legally correct outcome." *Romero*, 236 Or App at 643-44. That is, a trial court's misunderstanding and misapplication of the law that forms the basis for a discretionary decision may constitute a reversible error.

Youth makes five arguments in support of his assertion that the juvenile court relied on erroneous principles of law in determining that placement in OYA custody was in youth's best interests. First, we understand youth to argue that under the juvenile statutes there is an additional presumption that placement with parents is in youth's best interests, beyond the requirement under ORS 419C.478(1) that the juvenile court make a finding that placement with the OYA is in the youth's best interests. We are not persuaded by youth's statutory interpretation arguments.[2] The text of 419C.478(1) does not expressly create such a presumption. As we have explained previously, by requiring "findings concerning the child's best interests, the legislature expressed its intent that the juvenile court carefully evaluate the decision and separately provide a written explanation." *State v. D. B. O.*, 325 Or App 746, 749, 529 P3d 1004 (2023) (citing *State v. S. D. M.*, 318 Or App 418, 420, 506 P3d 1190 (2022)). We apply that understanding of the legislature's intent in this case.

In his second argument regarding the juvenile court's improper understanding of the law, youth argues that the juvenile court misunderstood "accountability" in the juvenile context. Specifically, youth argues that the juvenile court made a legal error by focusing too much on retribution and the community's interests. "Oregon's juvenile justice system is concerned with rehabilitation, not punishment[.]" *T. J. L.*, 335 at 485 (citing *State v. B. Y.*, 371 Or 364, 383, 537

---

[2] We do not understand youth to raise a separate constitutional argument on appeal.

P3d 517 (2023)). However, "it is important to acknowledge that the term 'accountability' can be used in different ways." *Id*. at 485-86. The juvenile court referred to "accountability" several times throughout its findings. After reviewing the findings, we understand the juvenile court to have referred to accountability in the reformative sense. The court did not conflate accountability with punishment. *See id*. (concluding that the juvenile court did not conflate punishment with accountability or lose sight of the need to determine what was in the youth's best interests based on the record).

In his third argument, youth argues that the juvenile court incorrectly "balanced" other dispositional considerations instead of focusing on whether OYA placement was in youth's best interests. Youth relies on the juvenile court's statement in its verbal findings that it would impose a disposition that it "believe[d] balances all of the interests" that it was legally required to consider. We do not view the court as having balanced the best-interests determination with the other dispositional considerations based on that statement. As discussed above, in *T. J. L.* we explained that "[l]ogically, the factors that drive the best-interest determination must be some subset of the factors that drive the disposition generally, as there is a single disposition." *T. J. L.*, 337 Or App at 603. Here, the juvenile court properly considered dispositional factors under ORS 419C.411(3) and (4) relevant to the best-interests determination under ORS 419C.478(1).

In his fourth argument, youth argues that that the juvenile court did not properly base the best-interests determination on the youth's current circumstances. The juvenile court focused on youth's current circumstances in the context of youth's past behavior, both positive and negative. That does not violate ORS 419C.478(1). Therefore, we are unpersuaded by youth's argument.

In his fifth argument, youth argues that the juvenile court justified the best-interests determination on administrative convenience. Youth relies on the juvenile court's statement that "this court cannot keep [youth] on electronic monitoring for five years" and our decision in *D. B. O.* In *D. B. O.*, we held that the court's written findings regarding

the best-interests determination were "too ambiguous to satisfy the requirement for an explanation of why it would be in the best interests of [the] youth" because the finding *only* explained why it was "desirable * * * as an administrative matter, for youth to be placed in OYA custody[.]" 325 Or App at 750 (internal quotation marks omitted). In this case, although the juvenile court did consider the administrative burden of keeping youth on electronic monitoring, that was an isolated remark in the middle of the juvenile court's lengthy consideration of the dispositional facts relevant to the best-interests determination. The juvenile court did not improperly base its best-interests determination on administrative convenience.

The juvenile court properly understood and applied the dispositional factors and best-interests determination. And the juvenile court did not abuse its discretion when it determined that commitment to OYA custody was in youth's best interests.

Youth also makes a separate argument that the juvenile court's findings that youth did not have sufficient structure and supervision and that he required more significant structure and supervision were not supported by any evidence in the record. After reviewing the record, we conclude that the juvenile court's findings regarding youth's circumstances and behaviors were supported by evidence.

B.   *Juvenile Court's Written Findings*

We turn to defendant's first assignment of error that the juvenile court's written findings were not supported by any evidence in the record. Youth did not preserve this assignment of error. But the preservation requirement is excused because the asserted error occurred for the first time in the judgment. *D. B. O.*, 325 Or App at 747-48 (excusing the preservation requirement for a similar argument for a youth committed to OYA custody when the juvenile court failed to include adequate written findings under ORS 419C.478(1)). Therefore, we address youth's argument on the merits.

As stated above, this court reviews the juvenile court's findings of historical fact for any evidence to support them. *G. L. D.*, 253 Or App at 418.

In placing a juvenile in the legal custody of OYA, a juvenile court is required to "include written findings describing why it is in the best interests of the adjudicated youth to be placed with [OYA]." ORS 419C.478(1). In this case, youth argues that the juvenile court relied on facts in its written findings that were unsubstantiated by the record. The juvenile court's findings reference facts regarding youth's ADHD, school disciplinary issues, and illegal behaviors such as driving without a license and consuming alcohol and marijuana. After reviewing the record, we conclude that there was evidence in the record to support the facts that the juvenile court references in its written findings.

For the reasons explained above, the juvenile court did not err.

Affirmed.